John Dunn, Respondent, v. Cass Avenue and Fair Grounds Railway Company, Appellant.

**St. Louis Court of Appeals, March 9, 1886.**

1. Negligence—Street Railroads—Ordinances.—The ordinances of the city of St. Louis do not require street railway companies to keep a conductor on each of its cars, in addition to a driver, and its failure to do so is not negligence *per se.*

2. ―――― Pleadings—Instructions — Practice. — Under a petition which alleges negligence of the conductor in not complying with an ordinance, it is error to instruct the jury upon the hypothesis that no conductor was upon the car.

3. ―――― Question for Jury.—The question as to whether a given act of negligence was the proximate cause of the injury complained of, is, where the character of the facts are such that different conclusions may be drawn from them, a question for the jury.

4. ―――― Parent and Child—Pleadings.—A father can not recover damages for the loss of his child's services without alleging and proving that the child was his servant.

5. ―――― Evidence.—Damages for the loss of a child's services can not be recovered without evidence tending to show the probable value of such services from the time of the injury to the child's majority.

6. ―――― Insufficient Proof.—A boy having safely alighted from a street car while it was in motion, and, while running across the street from behind the car, having been struck and injured by another car going in the opposite direction, it is error to leave to the jury the question as to whether the conductor's failure to stop the car for the boy to alight contributed to the injury.

Appeal from the St. Louis Circuit Court, Daniel Dillon, Judge.

*Reversed.*

Leonard Wilcox, for the appellant: Even if the plaintiff's son was lawfully on the defendant's car, yet the judgment should be reversed for error in

giving the plaintiff's instructions numbers four and seven. *Fortune v. Railroad*, 10 Mo. App. 252; *Gerren v. Railroad*, 60 Mo. 409; *Insurance Co. v. St. Mary's Seminary*, 52 Mo. 488–492; *Clay v. Railroad*, 17 Mo. App. 629. If the plaintiff's son was a trespasser on the defendant's car, then subdivision eight of section two of the ordinance had no application to this case. Consequently, instruction number four for the plaintiff should have been refused, and instructions numbers ten, fourteen, and seventeen of the defendant's refused instructions should have been given. Smith on Negligence, 1; *Hallihan v. Railroad*, 71 Mo. 116, 117: Thompson on Carriers, 443, sect. 4, *note* 1; *Atkinson v. New Castle Water Works Co.*, L. R. 2 Ex. Div. 445; *Henry v. Railroad*, 76 Mo. 295; *Snyder v. Railroad*, 60 Mo. 419, 420; *Braxton v. Railroad*, 77 Mo. 458. Assuming that, as to the plaintiff's son, there was a violation of the eighth subdivision of section two of the city ordinance, yet as a matter of law, this was not a "proximate cause" of the accident. Hence, instructions numbers four and seven for the plaintiff should have been refused, and the defendant's instructions numbers fifteen, seventeen, and eighteen should have been given. 2 Thompson on Neg. 1085, sect. 2; *Pearson v. Cox*, L. R. 2 Com. P. Div. 370; *McGrew v. Stone*, 53 Pa. St. 442; *Railway v. Smith*, 46 Mich. 509; Cooley on Torts, 69; *Sharp v. Powell*, L. R. 7 C. P. 253; *Clemens v. Railroad*, 53 Mo. 370; *Ballentine v. Railroad*, 40 505; *Francis v. Transfer Co.*, 5 Mo. App. 11; *The State v. Finn*, 11 Mo. App. 546; *Morrison v. Davis*, 20 Pa. St. 175. "There was no evidence that such an accident was probable, * * * nor was it a thing the probability of which must be known to all the world, so that the jury must be taken to know it without evidence." *Holman v. Railroad*, 62 Mo. 564; *Hoey v. Felton*, 11 C. B. (N. S.) 146; *Wallace v. Railroad*, 74 Mo. 597. The duty imposed on persons to guard against accidents "must mean accidents which could have been

easily foreseen." *Hallihan v. Railroad*, 71 Mo. 116, 117; *Swineford v. Franklin Co.*, 73 Mo. 283.

A. R. Taylor, for the respondent: The instructions leave it to the jury to find, first, whether or not there was a conductor or person acting as such on the south bound car; and if not, whether such failure to comply with the ordinance directly contributed to cause the injury. It is submitted that the instructions complained against are directly and precisely in consonance with the decision of this court in *Fortune v. Railroad* (10 Mo. App. 255). It frequently happens, as in the case at bar, that persons alight from one side of a car, and after so alighting pass in the other direction. Common prudence should have taught the conductor that the child would probably do so, and it was his duty to have stopped the car or warned the approaching car. In all such cases it is the correct practice to submit the issue of causation to a jury. *Patten v. Railroad*, 32 Wis. 524; *Scott v. Hunter*, 46 Pa. St. 192; *Lake v. Milliken*, 62 Me. 240; *Saxton v. Bacon*, 31 Vt. 540. If there is any doubt as to whether the injury is the result of a negligent act, the question should be submitted to the jury. *Clemens v. Railroad*, 53 Mo. 370; *Miller v. Martin*, 16 Mo. 508.

Thompson, J., delivered the opinion of the court.

This was an action for damages for injuries sustained by the plaintiff's son, in consequence of being run over by one of the defendant's cars. The plaintiff had a verdict and judgment for one thousand dollars, and the defendant appeals.

The petition is as follows:

"The plaintiff states that the defendant is, and at the time hereafter stated was a corporation by virtue of the law of Missouri, and operated the street railways and cars hereafter mentioned. That prior to and on the ninth day of October, 1884, there was in force within the city of St. Louis an ordinance of said city entitled, 'an ordi-

nance in revision of the ordinances of the city of St. Louis and for the government of said city.'

"That by section one, of article four, of chapter thirty-one of said ordinance, it was provided that no car shall be drawn at a greater rate of speed than six miles per hour. That the driver and conductor of each car shall keep a vigilant watch for all persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons to stop the car within the shortest time and space possible, and that conductors shall not allow ladies or children to leave or enter the car while the same is in motion.

"And plaintiff avers that the defendant's car was, on the ninth day of October, 1884, moving southward on its track along Glasgow avenue, within the city of St. Louis, and that at a point on defendant's railway north of Penrose or Madison street in said city, the conductor of said car did permit the son of the plaintiff, Charles Dunn, of the age of nine years, to enter said car, and said child was by said car of the defendant carried to the crossing of Penrose or Madison street and Glasgow avenue in said city, and there the conductor of defendant's said car allowed said child to leave said car whilst it was in motion, and plaintiff avers that said violations of said ordinance directly contributed to cause plaintiff's child to be injured as hereinafter stated. And plaintiff avers that when said car reached the said crossing his said child left said car whilst in motion, and was proceeding eastwardly across said Glasgow avenue, when another of defendant's cars proceeding northward along the eastern track of defendant's railway on said Glasgow avenue in said city, did run against and upon him, the said Charles Dunn, and did so crush and mangle his leg that the same had to be amputated.

"And plaintiff avers that the conductor and driver of said last named car of the defendant did negligently fail to keep a vigilant watch for persons on its said track or approaching same, and especially for plaintiff's said

child, and that said conductor and driver of the defendant's car did negligently fail to stop said car within the shortest time and space possible, upon the first appearance of danger to plaintiff's said child, and after they saw the danger to said child or might, by the exercise of such vigilant watch, have seen the danger to said child and have averted same, did nevertheless fail and neglect to stop said car within the shortest time and space possible, as it was their duty to have done. And plaintiff avers that said failure to keep the provisions of said ordinance directly contributed to cause said injuries to his child.

"And plaintiff avers that at the time said car did so run over and injure his child as aforesaid, it was being drawn at a greater rate of speed than six miles per hour within said city, and that said violation of said ordinance directly contributed to said injury to his child.

"And plaintiff further avers that the agents and servants of the defendant in charge of defendant's said car, so going northward, could, by the exercise of ordinary care, have discovered that plaintiff's said child was approaching defendant's said track, and was in danger of being injured, as aforesaid.

"And after such discovery of the danger to said child, could, by the exercise of ordinary care, have averted said injury to said child, yet neglected to do so, which said negligence directly contributed to cause said injury to plaintiff's said child.

"That by reason of the injuries to his child aforesaid, plaintiff has been compelled to incur great expense for medicines, medical attention, and nursing, to-wit: the sum of two hundred and fifty dollars, in seeking to cure his said injuries. And said son has been permanently disabled from labor, and plaintiff has, by said injuries to his son, been damaged in the sum of five thousand dollars, for which sum he prays judgment."

The answer admitted that the defendant was a corporation as alleged in the petition, but denied each and

every other allegation of the petition.    It then proceeded to aver that plaintiff's son, Charles Dunn, was a trespasser on defendant's car going south; that defendant had no notice of his being on the car; that he neither paid, nor offered, nor intended, to pay any fare, and although there was room inside, did not enter the car, but negligently remained on the outside and rear platform of said car, hanging on to the same on the lower step, concealing himself thereon; that he intended to ride and did ride thereon without paying his fare; that after riding a short distance on said car, he got off said car on the west side thereof, safe and uninjured, and instead of passing to the west sidewalk, voluntarily and negligently turned and ran east immediately behind the car on which he had been riding, and ran out from behind the same immediately into the horses of another car at the same instant going north on the eastern track; that the driver of this latter car could not have discovered plaintiff's said son in time to avoid injuring him. The defence of contributory negligence on the part of the boy was also set up.

The evidence tended to show that the plaintiff's son at the time of the injury was a bright lad of about nine years of age; that his mother had given him twenty-five cents, and that he had gone to the fair; that, arriving at one of the gates at the fair grounds, and having but twenty cents left, and being unable to get in he walked part of the way back, and seeing a south bound car of the defendant coming along at a trot, he jumped upon the rear platform and remained there while the car traversed the distance of about three blocks; that there was no conductor on the car; that there were about ten passengers upon it, one or two of whom, besides the boy, were upon the rear platform; that the boy did not pay his fare, though he testifies that he intended to do so, but did not do so because there was no conductor on the car to receive it; that desiring to get off, he requested one of

the passengers to ring the bell, which he did ; that the car nevertheless did not stop ; that the boy got off while the car continued at a trot, landing safely on the west side of the track, and between the track and the pavement; that he immediately turned and started to run eastwardly across the road, in order to accomplish which, he had to run across both tracks of the defendant's railway ; that as he ran towards the eastern track of the defendant's railway, a north bound car of the defendant heavily loaded with passengers, approached at an ordinary trot, on a grade slightly descending ; that before the boy saw his danger, he ran against the side of one of the horses, was thrown down so that both wheels of the car passed over one of his legs, requiring it to be amputated.   Another witness for the plaintiff, and a very willing one, who claims to have stood on the rear platform of the south bound car with the boy, does not remember to have heard the bell rung when the boy got off.   This witness testifies that as the boy ran toward the approaching north bound car, a bystander called to him to look out ; that he turned for a step or two toward the west, then immediately turned toward the east, running into the horse, as stated.   The father of the boy testified that a loaded street car could be stopped on a nearly level grade in from four to six feet; but another witness, experienced in running street cars, called for the plaintiff, testified that a car loaded as this car was, and going down a slight incline, at a gait of, say five miles an hour, could not be stopped in less than twenty-five or thirty feet.

The plaintiff put in evidence the following ordinance of the city of St. Louis :

"Section 1.   Every person, corporation, company, or co-partnership engaged in the business of transporting passengers from any one point to any other point within this city, for hire, on street railways, shall be subject to all the conditions, stipulations, and requirements of this article.

" Section 2, second subdivision. No car shall be drawn at a greater rate of speed than six miles per hour.

"Subdivision 7. The conductor and driver of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible.

"Subdivision 8. Conductors shall not allow ladies or children to leave or enter the cars while the same are in motion."

The court gave, at the request of the plaintiff, the following instruction :

" 4.  Under the law it was the duty of the defendant to have had a conductor upon the south bound car, or person acting as such.  That a failure to have such conductor, or person acting as such, upon said car whilst conducting its business as a carrier of passengers was negligence, and if they find that a failure to have such conductor or person acting as such upon said car directly contributed to cause the injury to the boy Charles, and without negligence on the part of the said boy or the plaintiff, as defined in the other instructions, then the plaintiff is entitled to recover."

We think this instruction was erroneous.  The ordinance above recited does not require all street railway companies to have conductors upon their cars, as well as drivers.  If it had been the intention of the municipal assembly to require this, it would have enacted it in direct terms.  A serious question might then arise as to the reasonableness of such an ordinance.  It might appear that some of the street railway companies, if put to this additional expense, could not operate their railways and at the same time comply with other ordinances of this city.  But we need not speculate upon this, because no ordinance was put in evidence which imposes upon all street railway companies this requirement.  The recital that the conductor and driver of each car shall

keep a vigilant watch, etc., means that the driver of each car shall keep such a watch, and that the conductor of each car which has a separate conductor, shall keep such a watch; but where a car has no separate conductor, the driver is both driver and conductor. *Fortune v. Railroad*, 10 Mo. App. 252, 255.

The case just cited was, in some respects, similar to the case before us. There, as here, the car was not of that construction known in popular "phrases as a "bobtail"; but it was a car which was regularly operated by two persons, a driver and a conductor. There, as here, the conductor had left the car temporarily, for his dinner, and the driver in addition to his duties as driver, was temporarily discharging the duties of the conductor, and there the plaintiff, a woman, alleged and gave evidence tending to prove that, desiring to alight from the car, she pulled the bell rope, but could not hear whether the bell rang or not, because she was deaf; that the car did not stop, and that she, nevertheless, endeavored to alight and was hurt. Upon this evidence, the court non-suited the plaintiff, and this court reversed the judgment, holding that the fact that there was no conductor on the car, and that the driver may have been unable to discharge the duties of conductor in preventing women and children from alighting when the car was in motion, as required by the ordinance, by reason of being compelled to keep his attention upon his duties as driver, was evidence of negligence sufficient to take the case to the jury. In other words, this court held that it could not be said, as a matter of law, that there was no violation of this ordinance, where the only person in charge of the car was driving on the front platform with his back to the passengers, and a lady was permitted, without remonstrance, to rise and leave the car by the back platform whilst it was in motion, the car being nearly empty.

To that ruling we adhere. But the instruction above quoted goes a step further, and tells the jury in substance and effect that the failure to have a separate person upon

the car, acting as conductor, was negligence *per se*. It assumes as a proved fact, the existence of which should have been left to the jury, namely, that there was a failure to have a conductor on the south bound car, or a person acting as such, and it tells them that that was negligence. In instructing the jury, it is error for the court to assume as proved a fact which is in dispute, and to declare to them the legal effect of such fact.

Again in this instruction (and this criticism also applies to the seventh instruction given for the plaintiff) is subject to the objection that it put to the jury a state of case not made in the pleadings. It allows them to find for the plaintiff upon the hypothesis that the injury to the lad occurred in consequence of there being no person on the car acting as conductor, whereas, the petition assumes that there was a conductor on the car, and alleges that "the conductor of defendant's car allowed said child to leave the car whilst it was in motion," etc. The seventh instruction, then, commits the error of submitting to the jury an issue not made by the pleadings, and the fourth instruction assumes that the fact involved in this issue has been established in a manner contrary to what is stated in the petition.

It will be perceived that this instruction (and the same may be said of the seventh instruction given for the plaintiff) submits to the jury the question whether the failure to have a conductor, or person acting as such, contributed to the injury of the boy. The court refused to give two instructions, numbered, respectively, fifteen and seventeen, offered by the defendant, to the effect that they could not find for the plaintiff upon the hypothesis of negligence in the conductor of the south bound car. These rulings present a somewhat close question, and it is this: whether where two street railway cars are approaching each other in opposite directions, and the conductor of one of them negligently fails to stop the car to allow a passenger to alight, or negligently allows a woman or child, being a passenger, to leave the car

while in motion, and such passenger, nevertheless, does alight safely on the opposite side of the car from which the other car is approaching, and, immediately turning to cross the street, is run over by the other car—the negligence of not stopping the car to allow the passenger to alight, or of not preventing the passenger from alighting while the car was in motion, can be submitted to a jury as the proximate cause of the injury to the passenger. It is sometimes loosely said, in judicial opinions, that the question whether the injury complained of was the proximate consequence of the negligence proved, or which there was evidence tending to prove, is generally a question of fact for the jury. But it is obvious that whether it will or will not be a question for the jury will depend upon the facts of each case. Where the connection between the act of negligence and the damages is so remote as to have no ground for difference of opinion among fair-minded men, as to whether the negligence was the natural cause of the damage, the judge should decide it, and should not submit it to the jury; but where a substantial doubt arises as to whether the damage was the natural and proximate, or a speculative and remote, result of the negligence, the question should be submitted to the jury under proper instructions. *Clemens v. Railroad*, 53 Mo. 366; *Railroad v. Pindar*, 53 Ill. 447; *Patten v. Railroad*, 32 Wis. 524; *Hoag v. Railroad*, 85 Pa. St. 293; s. c., 4 W. N. C. 552; 6 Cent. L. J. 95; 5 Reporter, 80; *Scott v. Hunter*, 46 Pa. St. 192, *Saxton v. Bacon*, 31 Vt. 540; *Tuff v. Warman*, 2 C. B. (N. S.) 739; *Lake v. Milliken*, 62 Me. 240; *Stark v. Lancaster*, 57 N. H. 88, 91; *Willey v. Belfast*, 61 Me. 569.

A majority of the court are of opinion that in this case no such doubt arises; that the boy having alighted safely on the opposite side from that on which the car on the other track was approaching, his position in regard to the subsequent injury is exactly the same as though the car from which he alighted had been at a halt when he alighted, and that the question whether

there was a case to go to the jury must be determined in view of what took place subsequently to his so alighting. I am unable to agree to this view. This view is based upon the right of the judge, upon a conception of the physical facts of the case, as disclosed by the evidince, to say whether or not a given act of negligence was the natural or probable cause of the subsequent accident. Looking at the same physical facts, my mind reaches a different conclusion. It seems clear to me that a passenger who attempts to alight from a street car in motion is necessarily obliged to act hurriedly, and to concentrate his faculties upon the act of alighting; for which reason, he will naturally be less cognizant of other danger. I can plainly see how a passenger, alighting on the right side of a street car going south, would be prevented, by the fact of the car obstructing his vision, from seeing the approach of another car coming in the opposite direction on a track of the same street on the east side of the track occupied by the car from which he is alighting. I can, also, see how a boy, who, after alighting from one car, under those circumstances, and starting to run from behind the car from which he had alighted, across the street, might suddenly encounter the car coming in the opposite direction, and possibly without negligence on his part. I can, also, understand how the fact of one car stopping at a crossing to discharge a passenger would operate as notice to the driver of a car, approaching near by in the opposite direction on another track on the same street, of danger to the passenger thus alighting; in which case it would be the plain duty of the driver of the latter car to be specially on the lookout for such danger, to check the speed of his car, or, if necessary, to stop it entirely. The administration of justice is a practical thing. Juries are expected, in deciding causes, to interpret the facts in the light of common experience. The conclusions which I have stated seem to me to be the deductions of common experience, from facts necessarily known to all the inhabitants of such a city as St.

Louis, to whom street cars form the almost exclusive mode of conveyance. One of the objects in having questions of fact in cases of this kind decided by twelve men instead of by one man, is to bring the average experience of a large number of men to bear upon the interpretation of the facts proved. "It is this class of cases," and those akin to it, said Mr. Justice Hunt, in a leading and important case, "that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard—the merchant, the mechanic, the farmer, the laborer—these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw an unanimous conclusion. This average judgment, thus given, it is the great effort of the law to obtain." *Railroad Co. v. Stout*, 17 Wall. 657, 664.

In actions of this kind, the sound rule is that where the facts in proof admit of different constructions or inferences, it is for the jury, and not for the court, to say what inferences shall be drawn. *Scoville v. Railroad Co.*, 81 Mo. 434, 439; *Smith v. Railroad Co.*, 61 Mo. 588; *Norton v. Ittner*, 56 Mo. 351; *Wyatt v Railroad Co.*, 55 Mo. 485; *Railroad Co. v. Stout*, 17 Wall. 657; *The State v. Railroad*, 52 N. H. 529; *Gaynor v. Railroad Co.*; 100 Mass. 208, 212; *Beers v. Railroad Co.*, 19 Conn. 566; *Vinton v. Scowab*, 32 Vt. 612; *Pennsylvania Canal Co. v. Bentley*, 66 Pa. St. 30, 34; *Bridges v. Railroad Co.*, L. R. 7 H. L. 213. It is merely a branch of this rule that where, as here, the law characterizes a given act or omission as negligence *per se*, the question whether it contributed to produce the injury complained of must go to the jury, where different minds might resolve the question differently. *The State v. Railroad*, 52 N. H. 528, 564; *Railroad Co. v. Armstrong*, 52 Pa. St. 282; *Railroad Co. v. Heileman*, 49 Pa. St. 60. See, also, *Patten v. Rail-*

*road Co.*, 32 Wis. 524; *Oliver v. La Valla*, 36 Wis. 592; *Poeppers v. Railroad Co.*, 67 Mo. 715; s. c., 7 Cent. L. J. 252; *Fairbanks v. Kerr*, 70 Pa. St. 86; *Saxton v. Bacon*, 31 Vt. 540; *Littleton v. Richardson*, 32 N. H. 59. But as a majority of the court are of the opinion stated, the judgment of the court is that the court erred in submitting to the jury the question whether the negligence of the conductor of the south bound car in allowing the boy to alight while the car was in motion, contributed to produce the injury. It was, therefore, unnecessary to consider the further objection that the question whether the negligence of the person in charge of the south bound car was the proximate cause of the injury was submitted to the jury under proper instructions.

This conclusion leaves the question, whether upon the whole case there was evidence of negligence sufficient to take the case to the jury, to turn upon two questions: 1. Whether the facts in evidence conclusively show contributory negligence in the boy who was injured. 2. Whether, in case the boy was guilty of contributory negligence, the driver of the north bound car was guilty of negligence contributing to the accident. Upon these two points all the members of the court are agreed. We think that it was properly left to the jury to say whether the fact that this boy, a child of nine years of age, emerging from behind the car from which he had alighted, and starting to run across the street quickly, came in collision with the horses of the north bound car, shows that he was not in the exercise of such care and prudence as should be expected in a boy of his years and capacity. We are, also, of opinion that there was no substantial evidence of negligence in the driver of the north bound car. The boy emerged suddenly from behind the south bound car, and ran immediately into the flank of the nigh horse of the north bound car. The car was loaded heavily with passengers, filling the car and crowding both platforms. The grade was slightly descending; the car was running at an ordinary

trot; the horses immediately shied to the right; the driver immediately applied the brakes, and the wheels of the car immediately went over the boy. The whole thing, the appearance of the boy, his collision with the horses, his falling down, and the passing of the wheels over him, was almost instantaneous. The accident was a grievous one, and the boy and his parents are entitled to profound sympathy. But it does not follow from this that the defendant ought to pay damages for it. In order to require them to do this, there ought to be some substantial evidence fairly tending to put them in the wrong. What they failed to do which they might have done, or what they did which they might have left undone, after the boy safely alighted from the south bound car, we are unable to gather from the evidence. Taking the alighting of the boy as the starting point, and going back no further, we are agreed that no evidence of negligence is exhibited on the part of the defendant. From this, it follows that, under the views of the majority of the court, there was no case to be submitted to the jury.

But, in view of the possible re-trial of the case, it seems proper to consider another question.

Upon the measure of damages the court instructed the jury as follows:

" 6. If they find for the plaintiff they should assess his damages at such sum as they believe from the evidence will compensate him for expenses incurred for medicines, medical attention, and nursing, not exceeding two hundred and fifty dollars, and for any loss of earnings caused by said boy being disabled from labor from the time of his injury until he shall have arrived at the age of twenty-one years, but the verdict can not exceed five thousand dollars."

The objections to this instruction are that there was no allegation in the petition, and no evidence of any loss of service by the plaintiff, and that the verdict was excessive, in the absence of any allegation of loss of service. The general rule of English law undoubtedly is

that in all actions *per quod servitium amisit*, such as actions by a father for the seduction or-enticing away of his child, it is absolutely necessary to aver in the declaration a loss of service ; (*Grinnell v. Wells*, 7 Man. & G. 1033 ; s. c., 8 Scott N. R. 741 ; *Postlethwaite v. Parkes*, 3 Burr. 1878 ; *Speight v. Oliviera*, 2 Stark N. P. Cas. 493 ; *Harris v. Butler*, 2 Mees. & W. 539 ; *Mortimore v. Wright*, 6 *Id.* 482 ; *Blaymire v. Haley*, 6 *Id.* 55) ; and to prove the loss of some service, however slight. *Grennell v. Wells*, 7 Man. & G. 1033 ; s. c., 8 Scott N. R. 741 ; *Dean v. Peel*, 5 East, 45 ; *Davies v. Williams*, 10 Q. B. 725 ; *Blaymire v. Haley*, 6 Mees. & W. 55 ; *Griffiths v. Teelgen*, 15 C. B. 344 ; *Maunder v. Venn*, Moo. & M. 323, 324, per Littledale, J.; *Manley v. Field*, 7 C. B. (N. S. 96 ; s. c., 29 L, J. C. P. 79.; *Harris v. Butler*, 2 Mees. & W. 539 ; *Terry v. Hutchinson*, L. R. 3 Q. B. 599 ; *Mortimore v. Wright*, 6 Mees. & W. 482 ; *Russell v. Corn*, 2 Ld. Raym. 1031 ; s. c., 6 Mod. 127 ; *Bennett v. Alcott*, 2 T. R. 166 ; *Postlethwaite v. Parkes*, 3 Burr, 1878 ; *Carr v. Clarke*, 2 Chit. 260 ; *Eager v. Grimwood*, 1 Wels. H. & G. 61 ; *Taylor v. Vanderveer*, 4 Harr. (N. J.) 22 ; *Robinson v. Burton*, 5 Harr. (Del.) 335 ; *Ellington v. Ellington*, 47 Miss. 329 ; *Sutton v. Huffman*, 3 Vr. (N. J.) 58 : *Patterson v. Thompson*, 24 Ark. 55 ; *Martin v. Payne*, 9 Johns. (N. Y.) 387 ; *Nickleson v. Stryker*, 10 Johns. (N. Y.) 115 ; *Hewitt v. Prime*, 21 Wend. (N. Y.) 79 ; *Emery v. Greere*, 4 Me. 33 ; *Hornketh v. Barr*, 8 Serg. & R. (Pa.) 36 ; *Roberts v. Connelly*, 14 Ala. 235 ; *George v. VanHorn*, 9 Barb. (N. Y.) 523 ; *Vossell v. Cole*, 10 Mo. 634 ; *Pray v. Gorham*, 31 Me. 240 ; *Vanhorn v. Freeman*, 1 Halst. (N. J.) 322 ; *Coon v. Moffet*, 1 Penn (N. J.) 436.

Our code of procedure has not dispensed with the necessity of averring the constitutive facts upon which the plaintiff predicates his right to recover ; but is more strict in this regard than was the practice at common law. It abolishes fictions and forms of action, and, so far as practicable, compels the plaintiff to state the real

facts upon which he predicates his right to recover, and to prove them as stated. The right to recover for the loss of services is predicated on the relation of master and servant, and not on the relation of parent and child. The relation of parent and child may exist, the child may be a minor, and yet the relation of master and servant may not exist between the father and the child. The child may have been adopted by another, with the consent of the father, in the mode pointed out by the statute ; he may have become bound as an apprentice to another ; he may have been emancipated by the father ; he may have been committed to the care of an incorporated charitable asylum, of which there are several in this state, which are by law clothed with the power of standing toward their wards *in loco parentis ;* his custody may have been permanently abandoned by his father to another, or it may have been committed to another in a judicial proceeding. It is, therefore, obviously necessary, where the action is by a father for an injury to his minor child, in order for him to recover for loss of the services of the child, to allege and prove that the child was his servant at the time of the injury. There is no averment in the petition in this case that the boy who was injured was the servant of the plaintiff, or that, by reason of the injury, the plaintiff has been deprived of his services, or will, in the future, be deprived of his services. There is an averment that "said son has been permanently disabled from labor ;" but this does not amount to an averment that the plaintiff has lost his services. As the petition only claims two hundred and fifty dollars, as expense for medical attention and nursing, it is plain that, under the pleadings, the plaintiff was entitled to recover no more than two hundred and fifty dollars.

As there was no issue in the case as to the amount of damages which the plaintiff has suffered, or would probably suffer, by reason of the loss of service of his son, it was natural that no evidence should have been

directed to such an issue. It incidentally fell out in the course of the plaintiff's testimony, in directing evidence toward another matter, that the child lived with his parents and had rendered some service to them, even on the day when the accident happened ; but no evidence was directed to the question of the probable value of the services of the lad to his father from the date of the injury until be should arrive at the age of twenty-one. Nevertheless, this question was first put to the jury by the above, and, also, by another, instruction, and they were allowed to take a guess at it in their retirement, and their verdict shows that they did guess that it was worth seven hundred and fifty dollars. For all that I can see in the record, they might have guessed that the boy's services were worth one-fifth of that sum, or five times that sum, with equal propriety. Now, assuming that this question had been an issue in the case, and speaking with a view of laying down a rule to govern a probable re-trial of this case, it is worth while to consider whether our law is in such a state that the rights of a party can be made the sport of a mere guess of a jury upon a question of damages, without any evidence upon which to predicate a finding, in a case where it is admitted that the damages are limited to a mere compensation for pecuniary loss, and that nothing is given as a *solatium*, or by way of public example. The general rule, applicable to every kind of action, whether *ex contractu* or *ex delicto*, is, that the amount of damage which the plaintiff is entitled to recover must not only be alleged, but proved. Accordingly, where the action is for value of personal property converted by the defendant, an answer denying every fact in the petition, but not denying the allegation of value, does not admit it, and it must be proved. *Wood v. Steamboat*, 19 Mo. 529 ; *McCord v. Doniphan Branch Railroad, ante,* 92. The rule is so strict that, although there is no answer, the allegation of value or of damages is not admitted by the default ; it must be

proved upon an inquiry of damages. *Field v. Barr*, 27 Mo. 416 ; *Wetzell v. Waters*, 18 Mo. 396. Following this rule, our supreme court has said in a recent case, which was an action against a railroad company for killing domestic animals, that, "the amouut of the damages, as well as any other issue, was to be found on testimony adduced at the trial. Neither court nor jury, without evidence on that issue, was authorized to find more than nominal damages." *Snider v. Railroad*, ·73 Mo. 465, 467. This rule is obviously to be applied, for still stronger reasons, where the damages do not flow, as a conclusion of law, from the wrong complained of : in other words, where the damages are what the books term special damages, as distinguished from general damages. "Special damages," says Mr. Chitty, "must be stated with great particularity, in order that the defendant may be able to meet the charge if it be false ; and if it be not so stated, it can not be given in evidence." 1 Chitty Pleading, 411. See, also, *Tomlinson v. Town of Derby*, 43 Conn. 562 ; *Chicago v. O'Brennan*, 65 Ill. 160. Obviously, it is quite as important to require particularity in proving such damages as to require particularity in alleging them. It seems, therefore, important in any case where a father sues for damages sustained by him in consequence of a personal injury to his minor child, for him to lay the damages specially, and to prove them as laid, for such damages are obviously special damages, since no damages, as a mere conclusion of law, can be said to accrue to him from such an injury. There is nothing in the case of *Nagel v. Railroad* (75 Mo. 653), which sanctions a different principle ; for there the action was for damages resulting in the death of the plaintiff's child under a statute (Rev. Stat., sect. 2123), which allows the jury to give such damages, not exceeding $5,000, as they may deem fair and just, having regard to the mitigating or aggravating circumstances attending the wrongful act, negligence, or default ; and it was held that the terms of the statute rendered it

unnecessary for the plaintiffs to offer evidence as to the amount of damages sustained by them. The case of *Frick v. Railroad* (75 Mo. 542), is not authority for the doctrine that where a father is suing for a personal injury to his child, the jury may assess the value of the loss of service of the child without any evidence upon the question. In that case, the court instructed the jury that they should assess the plaintiff's damages at an amount which would fully compensate and indemnify him for the consequent loss of service and requisite care of the child, and expenses, which the *evidence* showed resulted from the injury, for a period not exceeding the minority of the child. This instruction was held to be in conformity with the prior rulings of the supreme court ; and the case of *Smith v. St. Joseph* (55 Mo. 456), was cited to this point. There is nothing in this last case which authorizes the jury to assess such damages without evidence. What is here said has no reference to those cases where the *gravamen* of the action is physical suffering, and where the jury are allowed to give what is sometimes called a "round sum." *Winkler v. Railroad, ante, p.* 99

It may, also, be proper briefly to dispose of some other points made by the appellant. Instruction numbered three, given for the plaintiff, defining the word "negligence," was perfectly proper. Instruction numbered eleven, offered by the defendant, and refused, (numbered four in the record), was properly refused, because no clause of any ordinance was read in evidence prescribing the rule to which it related. There is nothing in the point that the petition does not allege that the defendant was engaged in the business of carrying passengers, and hence, that it was error to admit the ordinance in evidence ; because everybody knows that the sole business of street railway companies is the carrying of passengers, and the court might take judicial notice of that fact.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.

Opinion of the court on motion to modify the judgment. (Per curiam).

The appellant moves to modify the judgment, rendered by this court herein, so as to make a final judgment here, and bases its motion on the ground that all the evidence offered by the plaintiff in the trial court was admitted, and fails to show any valid cause of action in the plaintiff.

The supreme court in similar cases has established the practice of reversing the judgment without remanding the cause for new trial. *Zimmerman v. Railroad,* 71 Mo. 476; *Powell v. Railroad,* 76 Mo. 80, 85; *Lenix v. Railroad,* 76 Mo. 86, 91. This practice is warranted by the statute (Rev. Stat., sect. 3776), and has been followed by this court in numerous instances.

The motion will be sustained. The judgment entry herein is modified so as to reverse the judgment without remanding the cause for new trial.