FRANK HORTON & COMPANY, INC., a
corporation, Appellant,

v.

George DIGGS, Respondent.

No. KCD 28349.

Missouri Court of Appeals,
Kansas City District.

Nov. 29, 1976.

**314**

Boyer & Ratzlaff, John R. Miller, Edison Kaderly, Lamar, for appellant.

Blanchard, Van Fleet, Martin, Robertson & Dermott, Karl W. Blanchard, Ronald E. Mitchell, Joplin, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The plaintiff corporation seeks damages for injuries to its vice-president, Estel Gideon, then in the operation of a company truck and injured by collision with the defendant. Count I of the petition alleged that the corporation was engaged in the installation of underground communications cables by contract and that in the conduct of such affairs, vice-president Gideon was in charge of work crew operations. It was further alleged that the injuries kept Gideon from this work so that he could not recruit and field an additional crew necessary to complete installations already under contract. The pleading concluded with the allegations that no other employee was qualified to perform these services which went undone with a resultant loss of profits to the corporation of $150,000.

The defendant moved the dismissal of this pleading for failure to state a claim for relief on the grounds that (1) a claim by a master for the loss of services of the servant does not exist, and (2) that the provisions of The Workmen's Compensation Law [Chapter 287] preclude such an action.

The trial court dismissed Count I and retained jurisdiction over Count II of the petition, which remained.

The recitations of Count I are the old pleading, *per quod servitium amisit*,[1] which allowed a master to recover for the loss of the services of a servant injured by ill use or other trespass. This common law writ is mentioned in an early Missouri case [*Dunn v. Cass Avenue and Fairgrounds Railway Company*, 21 Mo.App. 188, aff'd 98 Mo. 652, 11 S.W. 1009 (1886)] but our courts have not considered, hitherto, whether our jurisprudence allows such a remedy. Those sparse decisions which deal with the question, with good reason, consider the doctrine anomalous to contemporary life and, in the absence of a domestic relation, refuse to extend recovery to a master for the loss of services of his employee from a negligent injury by a third person.

The doctrine which allows a master an action for the loss of services of the servant—to the extent that it survives at all—reflects a time when service was a status. Prosser on Torts, § 129 (4th ed. 1971); 57 C.J.S. Master and Servant § 622. The lineage of this remedy commences in the early Roman law of persons which gave to the *paterfamilias* sway over the household, children, servants and slaves alike, who were so far identified with the domestic head that an injury to any of them gave rise to an action to the *paterfamilias,* who alone was entitled to recovery. This idea was taken bodily into the English common law by Bracton so that a master had both a direct action for injury to a servant or another under his power, as well as an indirect action for the consequential loss of his services. Sayre, Inducing Breach of Contract, 36 Harvard L.Rev. 663 (1923). Thus, the common law treated a servant as hardly more than a chattel of the master. *Inland*

1. "Whereby he lost the service [of his servant]."

*Revenue Commissioners v. Hambrook,* 3 Week L.R. 643, 3 All Eng 338 (2 QB 641 1956); 57 A.L.R.2d 790.

■ The realities of our day are different. A servant no longer regards himself as his master's man, but as an independent person who bargains effectively for his employment conditions. Seavey, Liability to Master for Negligent Harm to Servant, Wash.U.L.Q., p. 309 (1956). Thus, the relation of master and servant no longer rests on status but on contract.

A systematic history of the development of this distinctive cause of action appears in *Inland Revenue Commissioners v. Hambrook, supra.* In that case the Crown sought to recover for the loss of services of a civil servant which resulted from negligent injury inflicted by the defendant. The court traced out the progression of the *per quod servitium amisit* remedy in the early common law which treated a servant as the property of the master to the eighteenth century when the action *per quod* became confined to menial servants, those who lived in the household of the master as part of the family. The court concluded that an action which treats a servant as a chattel was anomalous and should not be extended, but confined to domestic relations where a member of the household is injured.

This is the tenor of those cases which have considered the question seriously. Thus, *Nemo Foundations, Inc. v. New River Company,* 155 W.Va. 149, 181 S.E.2d 687 (1971) denied an employer an action for damages against a tortfeasor for negligent injury to his employee. That court adopted the rationale of *Inland Revenue Commissioners* that such an action by a master is anomalous and should be confined to menial servants who live as part of the family, and not extended to other employers who keep no household. See, also, *Snow v. West,* 250 Or. 114, 440 P.2d 864[1] (banc 1968); *Steele v. J. and S. Metals, Inc.,* 32 Conn.Sup. 17, 335 A.2d 629 (1974); *Ferguson et al. v. Rensselaer County Air Park, Inc. et al.,* 75 Misc.2d 818, 348 N.Y.S.2d 943; *Chelsea Moving & Trucking Company v. Ross Towboat Company,* 280 Mass. 282, 182 N.E. 477 (1932); *Burgess v. Carpenter,* 2 S.C. 7 (1870).

The several cases plaintiff cites do not bear on the contention made on appeal that the common law of this state includes the *per quod servitium amisit* remedy. The only Missouri case which mentions that action, *Dunn v. Cass Avenue and Fairgrounds Railway Company,* 21 Mo.App. 188 (1886), was a claim by a father for negligent injury to his son. The plaintiff failed to prove a submissible case and the cause was reversed. The court then considered the questions which might arise on retrial and advised [l.c. 204] that "[t]he right to recover for the loss of services is predicated on the relation of master and servant, and not on the relation of parent and child". The court went on to point out that the general rule of English law in all such actions *per quod* required the declaration to allege, and the evidence to prove, a loss of service by the master [parent]—conditions not met in the first litigation. The cause of action considered by that opinion, of course, was by a father for negligent injury to his minor child and the allegation of the loss of services of a servant was made only to comply with the fictive formalities of the writ, not recognition of the cause of action for an employer, as the plaintiff here contends.

The technical requirement of pleading was allowed some vagary [*Scamell v. St. Louis Transit Co.,* 103 Mo.App. 504, 77 S.W. 1021, 1023[4] (1903)] and was discarded altogether in *Mennemeyer v. Hart,* 359 Mo. 423, 221 S.W.2d 960 (1949) which recognized that [l.c. 962]:

> . . . the true ground of recovery by a parent in such cases arises from the reciprocal duty of the child to render to its parents such services or earnings as the latter may reasonably expect of it . . . [and not] on a false and fictitious relationship of master and servant.

Two other cases cited by the plaintiff on the contention that a master has a cause of action for negligent injury to his servant have even less relevance. *Johnson v. Harris,* 187 Okl. 239, 102 P.2d 940 decided that a

statute which gives a husband, parent, guardian or master a cause of action for the seduction of a wife, daughter, orphan sister or daughter did not deny to the female the cause of action in her own right. The right of a master to sue for negligent injury to a servant which the case expresses was not on a principle of the common law, but was enabled by statute, a consideration not present here. *Earley v. Pacific Electric Railway Company,* 176 Cal. 79, 167 P. 513 (1917) also was based on statute, not the common law, so those comments are extraneous to the claim plaintiff makes here, and so also *Darmour Productions Corp. v. Herbert M. Baruch Corp.,* 135 Cal.App. 351, 27 P.2d 664 (1933). *Jones v. Waterman SS Corp.,* 155 F.2d 992 (3rd Cir. 1946) and *Houston Belt & Terminal Railway Company v. Burmester,* 309 S.W.2d 271 (Tex.Civ.App. 1957) were claims under maritime law for maintenance, cure and wages paid by the employer to a seaman as the result of negligent injury by third persons. *Jones* allowed recovery on the theory of indemnity and not on the right of an employer to the loss of services, and observed that the distinctive relation of ship owner to seaman was more akin to that of father to child than of master to servant. *Houston Belt* denied indemnity in the absence of such a right given by contract or statute; the court did not reach whether under the law of the state an employer could recover for loss of services of his employee.

■ The recent decisions on the subject [except for those few still bound by statute] reject the common law view which treats a servant as a chattel of the master and consider, instead, that the relation between them rests on contract. Accordingly, the tort action *per quod servitium amisit* for the loss of services by a master for negligent injury to the servant[2] has given

way to the tort action which allows a party to a contract to recover for the malicious interference by another with performance by the promisor. This later development of the law, as well as the common law *per quod* for loss of services, derive from the same concept of status. Sayre, Inducing Breach of Contract, 36 Harv.L.Rev. 663 (1923); Prosser on Torts, § 129 (4th ed. 1971). The policy difference between them is the assumption, on the one hand, of a condition of economic servitude, and an employment freely contracted, on the other. The juridical difference between them is that the common law action *per quod* is a tort for negligent injury, while interference with contract properly pleads an intentional tort. *Clark-Lami, Inc. v. Cord,* 440 S.W.2d 737, 741[8] (Mo.1969); Restatement of Torts, § 766.

■ We conclude that the common law remedy *per quod servitium amisit* has not been given effect in the courts of this state and to do so now would contradict an enlightened public policy. To the extent that the petition attempts a recovery for the corporate employer-plaintiff on that theory, the allegations fail to state a justiciable controversy. If, nevertheless, we construe the petition as a statement for the interference by defendant with the contract of employment between Gideon and his employer, the element of malice or intention to do wrong is absent and the petition fails again. *Downey v. United Weatherproofing, Inc.,* 363 Mo. 852, 253 S.W.2d 976, 980[4] (1953); Restatement of Torts, § 766.

■ The law does not protect a contractual interest from mere negligent interference because to do so would unduly burden freedom of action and impose too severe a penalty for inadvertence. *Phoenix Professional Hockey Club, Inc. v. Hirmer,*

---

**2.** The petition before us does not allege injury to a member of the household so we need not consider the validity of the numerous decisions [including among others, *Snow v. West; Inland Revenue Commissioners v. Hambrook; Ferguson v. Rensselaer County Air Park,* all *supra*] which retain the common law *per quod* cause of action for loss of services where the employer stands *in loco parentis* to the employee—as

in the case of a domestic or other menial. That right of action, as any other under that common law remedy, rests on the principle which considers the servant property of the master, and is as unseemly to a free society as any other application of that premise. Blackstone Commentaries, Vol. 1, p. 425; *Inland Revenue Commissioners v. Hambrook, supra,* cited in 57 A.L.R.2d 794.

108 Ariz. 482, 502 P.2d 164, 165[1–3] (banc 1972); *Steele v. J. and S. Metals, Inc.,* 32 Conn.Sup. 17, 335 A.2d 629, 630[2] (1974). So, also on this principle, an employer may recover loss of services from the wrongdoer for the intentional harm done the employee, but not if the injury is done through mere negligence. 1 Harper & James, Tort, § 6.10; Seavey, Liability to Master for Negligent Harm to Servant, Wash.U.L.Q., p. 309 (1956). That is because the law considers that a tortfeasor cannot be held to foresee that the negligent injury he inflicts upon the employee also damages the employer by the impairment of the services owed under the contract of employment. *Nemo Foundations, Inc. v. New River Company,* 155 W.Va. 149, 181 S.E.2d 687, 689[1] (1971); *Chelsea Moving & Trucking Co., Inc. v. Ross Towboat Co.,* 280 Mass. 282, 182 N.E. 477, 478[1] (1932); 1 Harper & James, Tort, § 610.

 The petition was properly dismissed by the trial court for failure to state a claim for relief. The second ground asserted in the trial court for dismissal—that the cause of action was nevertheless preempted by The Workmen's Compensation Law [Chapter 287]—becomes cumulative. To that we say only that the common law cause of action *per quod* gave the employer an independent cause of action for damages *in consequence* of the injury to the employee. Loss of services, not bodily injury to the employee, was the gist of the action. *Voss v. Howard,* 1 Cranch C.C. 251, Fed. Cas.No.17,013 (D.C.1805). The right to recover for this wrong was not derivative but independent of any right the employee may have had. *Voss v. Howard,* 1 Cranch C.C. 251, Fed.Cas.No.17,013 (D.C.1805); *Wolff v. Du Puis,* 233 Or. 317, 378 P.2d 707 (banc 1963). The right of an employer under The Workmen's Compensation Law rests on subrogation, a different theory altogether. See: Seavey, Law of Agency, Chapter 9, § 120.

The judgment is affirmed.

All concur.