**CRAVENS/POCOCK INSURANCE AGENCY, INC., Appellant,**

v.

**JOHN F. BEASLEY CONSTRUCTION COMPANY, INC., and Bill L. Landfair, Appellees.**

No. 05–88–00264–CV.

Court of Appeals of Texas, Dallas.

Jan. 25, 1989.

Paul Dodson, Corpus Christi, for appellant.

Rachelle Hoffman Glazer, David R. Noteware, Dallas, for appellees.

Before WHITHAM, HECHT[1] and LAGARDE, JJ.

LAGARDE, Justice.

Cravens/Pocock Insurance Agency, Inc. (Cravens) appeals from a take-nothing judgment rendered in favor of John F. Beasley Construction Company, Inc. and Bill L. Landfair (Beasley). The trial court entered the take-nothing judgment after striking Cravens' pleadings for failure to state a cause of action. In a sole point of error, Cravens asserts that the trial court erred in striking its pleadings and entering a take-nothing judgment since the pleadings stated a valid cause of action. We disagree; consequently, we affirm the trial court's judgment.

George R. Pocock and his wife, Linda Pocock, brought suit against Beasley seeking damages for personal injuries allegedly suffered by them as a result of an automobile accident wherein George Pocock was a passenger and Bill Landfair was allegedly a negligent driver. Later, Cravens joined the suit as an additional plaintiff asserting that, as the employer of a negligently injured person, it could recover for loss of its employee's services. George Pocock was president of Cravens.

Cravens based its proposed theory of recovery on the ancient common law principle of *per quod servitium amisit. See Frank Horton & Company v. Diggs,* 544 S.W.2d 313, 314 (Mo.App.1976). Beasley specially excepted to the paragraph of Cravens' pleading asserting a claim for loss of services of its employee for the reason that it failed to state a cause of action. After a hearing, the trial court sustained Beasley's special exception and ordered Cravens to replead within thirty days. Cravens did not amend its pleading, and the trial court entered a take-nothing judgment against

---

**1.** Although Justice Hecht was on the panel at the time of the submission of this case, he left the Court between the time of submission and the time of the issuance of this opinion; consequently, Justice Hecht did not participate in this decision.

Cravens for its failure to state a cause of action.

At the outset of our discussion of this legal theory, we note that the Texas legislature has not seen fit to statutorily adopt this rule, and we find no occasion when a Texas court has based its holding on this theory. This case, therefore, presents a question of first impression under Texas law.

### Historical Perspective

The common law does contain the doctrine of *per quod servitium amisit,* and Texas adopted the English common law as precedent in 1840.[2] The theory that a master may recover damages for the loss of services of a servant injured by a negligent third party harks back to a common law principle known as *per quod servitium amisit.* H. BROOM, COMMENTARIES ON THE COMMON LAW 849 (4th ed. 1873); R. PERCY, CHARLESWORTH ON NEGLIGENCE 895 (6th ed. 1977). This remedy originated in early Roman law when children, servants, and slaves were so closely identified with the domestic head of the house that an injury to them gave rise to an action by the *paterfamilias,* the male head of the house, who alone was entitled to recover for these damages. *See* Sayre, *Inducing Breach of Contract,* 36 HARV.L. REV. 663, 663 (1923). Subsequently, this idea was taken wholly into the English common law so that a master had a cause of action for loss of services. *Id.*

Over time, as English common law progressed, the rule of *per quod servitium amisit* came to be stated as follows:

A master also may bring an action against any man for beating or maiming his servant: but in such a case he must assign, as a special reason for so doing, his own damage by the loss of his service; and the loss must be proved upon the trial.

1 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 429 (9th ed. 1783). Blackstone then went on to state, "The reasons and foundation upon which all this doctrine is built, seem to be the property that everyone has in the service of his domestics ..." *Id.* As these quotes indicate, it was deemed proper during the time of the English cottage industry to regard the interests of master, parent, and husband as *property interests* for which an action for trespass would lie. *See* Seavy, *Liability to Master for Negligent Harm to Servant,* 1956 WASH U.L.Q. 309, 310 (1956).[3] In *Phoenix Professional Hockey Club, Inc. v. Hirmer,* 108 Ariz. 482, 482, 502 P.2d 164, 164 (1972) (en banc), the court stated:

The action apparently was based upon the particular social status of a master and servant at the time. Just as a father can recover for the loss of services of his child, and a husband can recover for loss sustained by injuries to his wife, a master could recover for the loss of services of his servant, who at that time was a member of the master's household and occupied a quasi-familial relationship with him.

*Id.* Eventually, however, the social and economic relationship between master and servant which formed the basis of the negligent tort of *per quod servitium amisit* evolved into a contractual relationship between employer and employee with a significant juridical difference.

In *Frank Horton & Company v. Diggs,* 544 S.W.2d at 315–16, the court stated:

The realities of our day are different. A servant no longer regards himself as his master's man; but as an independent person who bargains effectively for his employment conditions.... Thus, the relation of master and servant no longer rests on status but on contract....

Accordingly, the total action *per quod servitium amisit* for the loss of services

---

2. An Act To Adopt the Common Law of England, to Repeal Certain Mexican Laws, and Regulate the Marital Rights of Parties. 1840 Tex. Gen.Laws 1, 2 H. Gammel, Laws of Texas 177 (1898).

3. Based on the theory that the husband or father was in possession of the spouse or daughter, he could also bring an action for seduction or injury resulting in loss of services. Seavy at 310.

by a master for negligent injury to the servant has given way to the tort action which allows a party to contract to recover for the malicious interference by another with performance by the promissor. This later development of the law, as well as the common law *per quod* for loss of services, derived from the same concept of status. Sayre, *Inducing Breach of Contract*, 36 Harv.L.Rev. 663 (1923); *Prosser on Torts*, § 129 (4th ed. 1977). The policy difference between them is the assumption, on the one hand, of a condition of economic servitude, and an employment freely contracted, on the other. The juridical difference between them is that the common law action *per quod* is a tort for negligent injury, while interference with contract properly pleads an intentional tort. *Clark–Lami, Inc. v. Cord*, 440 S.W.2d 737, 741 (Mo. 1969); *Restatement of Torts*, § 766.

Despite this firm common law foundation, the action of *per quod servitium amisit* fell into disuse in the United States. In fact, during the early twentieth century, one noted Texas commentator stated:

> The older law writers dwell in this connection on the action of the master for loss of service due by contract; but in modern social and economic life such actions, on account of personal injuries, are rarely brought; none, it is believed, has ever reached the appellate courts of Texas.

R. STREET, THE LAW OF CIVIL LIABILITY FOR PERSONAL INJURIES BY NEGLIGENCE IN TEXAS 31 (1911). The commentator went on to conclude that the only value in studying this particular theory was that the principle on which it rested formed the basis for the related action of a parent suing for injuries to his minor child. *See id.*

### Recent Trends

In modern times, legal commentators have noted that courts generally refuse to extend the rule to persons employed by the plaintiff but who are not classified as servants. PROSSER AND KEETON ON THE LAW OF TORTS 998 (P. Keeton ed. 5th ed. 1984). Where the rule is still viable, it extends only to servants who are *intra moenia, i.e.,* part of the household or family. R. PERCY at 895; *see* PROSSER AND KEETON at 998. Specifically, according to the commentators, the action does not lie at the instance of governments, limited liability companies, or other employers who keep no household. R. PERCY, at 896.

As for Texas case law on this subject, Cravens cites a thirty-year-old case that casually mentions the theory of *per quod servitium amisit*. *See Houston Belt & Terminal Rwy. v. Burmester*, 309 S.W.2d 271, 278 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.). Seizing upon the language, "the employer in his action against a tortfeasor for injuries to his employee is limited to a recovery of damages measured by the loss of services," *Burmester*, 309 S.W.2d at 278, Cravens argues that Texas has recognized the common law rule and that it remains valid under Texas law. We disagree. The statement in *Burmester* on which Cravens relies is dictum. We do not read *Burmester* as even addressing the issue presented here. *See Frank Horton & Company*, 544 S.W.2d at 316. The dictum in *Burmester*, of course, does not present any binding or persuasive authority for applying the theory to the instant cause. *See Brady v. Brooks*, 99 Tex. 366, 375, 89 S.W. 1052, 1054 (1905); *Reynolds–Penland Co. v. Hexter*, 567 S.W.2d 237, 241 (Tex.Civ.App.—Dallas 1978, writ dism'd by agr.). Moreover, Cravens cites no Texas case, nor do we find a Texas case, that has ever cited *Burmester* for that principle or that has actually based its own holding on such a theory.

Similarly, Cravens does not cite, nor do we find, a single recent case from another jurisdiction that applies this ancient common law principle in a case involving negligent conduct. We note, however, that at least ten jurisdictions have refused to apply *per quod servitium amisit* in cases involving negligence. *Phoenix Professional Hockey Club*, 502 P.2d at 164–65; *I.J. Weinrot & Son, Inc. v. Jackson*, 40 Cal.3d 327, 332, 220 Cal.Rptr. 103, 106, 708 P.2d 682, 690–91 (1985); *Steele v. J. and S.*

*Metals,* 32 Conn.Sup. 17, 18–20, 335 A.2d 629, 629–30 (1974); *Ireland Elec. Corp. v. Georgia Highway Express, Inc.,* 166 Ga. App. 150, 150–52, 303 S.E.2d 497, 498 (1983); *Baughman Surgical Assoc. v. Aetna,* 302 So.2d 316, 318–19 (La.Ct.App.1974); *B.V. Merrow Co. v. Stephenson,* 102 Mich. App. 63, 64–67, 300 N.W.2d 734, 735–36 (1980); *Frank Horton & Co.,* 544 S.W.2d at 316; *Ferguson v. Green Island,* 44 A.D. 2d 358, 359–60, 355 N.Y.S.2d 196, 198 (N.Y. App.Div.1974), *aff'd,* 36 N.Y.2d 742, 368 N.Y.S.2d 163, 328 N.E.2d 792 (1975); *Snow v. West,* 250 Or. 114, 116–18, 440 P.2d 864, 865 (1968); *Hartridge v. State Farm,* 86 Wis.2d 1, 7–9, 271 N.W.2d 598, 601 (1978). Recovery has even been denied for executives and professionals whose loss represents harm to the employer that cannot be avoided by replacing the injured employee with someone else. *See Offshore Rental v. Continental Oil,* 22 Cal.3d 157, 170, 148 Cal.Rptr. 867, 875, 583 P.2d 721, 729 (1978); *Baughman Surgical Assoc.,* 302 So.2d at 318–19.

Finally, while the commentators and the case law overwhelmingly indicate that we should not apply the theory, we must point out that several policy considerations also strongly suggest that we should refrain from applying the rule. First, adoption of such a rule could cause the judicial floodgates to open and release a torrent of actions to swamp already crowded dockets. *See Herrick v. Superior Court,* 188 Cal. App.3d 787, 791, 233 Cal.Rptr. 675, 677 (1987). Cravens argues that proliferation of claims should not be a concern. Cravens reasons that *Burmester* allows a cause of action based on loss of services of an employee caused by the negligent conduct of a third person and that the courts have not been inundated. We reject Cravens' argument for the reason that we disagree that *Burmester* stands for that proposition; in fact, the lack of cases supports our position that the language in *Burmester* on which Cravens relies is dictum, and, contrary to Cravens' position, the court in *Burmester* did not reach the issue. Also, a cause of action without any recent case law prece-

dent or statutory restriction could wreak havoc on the judicial system. Consequently, we conclude that this subject is better suited to legislative than to judicial determination.

We agree with the court in *Hartridge* that we should consider public policy factors such as the remoteness of foreseeability of injury, the disproportion of injury to culpability, the extraordinary nature of the result, the unreasonable burden on the negligent tortfeasor, the likelihood of fraudulent claims, and the fact that this theory of recovery has no sensible or just stopping point. *Hartridge,* 271 N.W.2d at 601. We have considered all those factors.

Thus, in conclusion, we decline to apply the common law rule of *per quod servitium amisit.* The rule may have made sense in a society where servants, children, and wives were considered mere chattels, but, fortunately, people think differently today. Nothing now resembles what was once thought of as the status of the servant. Consequently, we decline to apply this obsolete, archaic, and outmoded theory.[4] We affirm the trial court's judgment.

---

**4.** Our holding is limited to the specific issue presented here, *i.e.,* the recovery by an employ-

er for loss of services of an employee who is *negligently* injured by a third person.