## 64662. IRELAND ELECTRIC CORPORATION v. GEORGIA HIGHWAY EXPRESS, INC.

POPE, Judge.

Appellant Ireland Electric Corporation filed suit against appellee Georgia Highway Express, Inc. alleging that W. E. Griffin, Jr., appellee's employee acting within the scope of his employment driving appellee's vehicle, failed to stop and collided into a vehicle being operated by appellant's employee, Quincy O. Miller. As a result, Miller suffered personal injuries for which appellant seeks recovery of Miller's medical expenses and for the loss of Miller's services "requiring [appellant's] president to perform work and services its employee, Mr. Miller, would have performed at a cost of $5,000.00."

The trial court granted appellee's motion to dismiss for failure to state a claim upon which relief could be granted. Appellant enumerates this ruling as error.

The legal issue involved herein is whether an employer has a cause of action against the employer of an alleged tortfeasor for the loss of his employee's services due to injuries sustained by that employee as a result of the tortfeasor's negligence. At the outset, we reiterate that the opinion of this court shall in no way be read as a comment upon the *injured party's* cause of action against the employer of the alleged tortfeasor. See Code Ann. § 105-108 (now OCGA § 51-2-2). The injured party's cause of action is simply not the issue in the case sub judice.

Appellant apparently bases its claim upon Code Ann. § 105-107 (now OCGA § 51-1-9): "Every person may recover for torts committed to himself, his wife, his child, his ward, or his servant." Appellee argues that the common law action *per quod servitium amisit*,[1] which supported the master's recovery for the loss of services of his servant, is archaic and no longer viable.

A determination of the present viability of the action *per quod servitium amisit* requires an examination of the origin of this ancient theory of recovery. "The doctrine which allows a master an action for the loss of services of the servant — to the extent that it survives at all — reflects a time when service was a status. Prosser on Torts, § 129 (4th ed. 1971); 57 C. J. S. Master and Servant § 622. The lineage of this remedy commences in the early Roman law of persons which gave to the *paterfamilias* sway over the household, children, servants and slaves alike, who were so far identified with the domestic head that an

---

[1] "Whereby he lost the service (of his servant)." Black's Law Dictionary 1294 (4th ed. 1968).

injury to any of them gave rise to an action to the *paterfamilias,* who alone was entitled to recovery. This idea was taken bodily into the English common law by Bracton so that a master had both a direct action for injury to a servant or another under his power, as well as an indirect action for the consequential loss of his services. Sayre, Inducing Breach of Contract, 36 Harvard L. Rev. 663 (1923). Thus, the common law treated a servant as hardly more than a chattel of the master. Inland Revenue Commissioners v. Hambrook, 3 Week L. R. 643, 3 All Eng 338 (2 QB 641 1956); 57 A. L. R. 2d 790." Frank Horton & Co. v. Diggs, 544 SW2d 313, 314 (Mo. App. 1976). The proprietary interest of the master in the servant is further exemplified by the relationship of the feudal lord to his villein or servant. "He owned such servant and any injury to him resulted in injury to the lord. In such a state of society it was natural to give a master a cause of action against one who injured his servant." Nemo Foundations v. New River Co., 155 W. Va. 149, 150-1 (181 SE2d 687, 688) (1971).

It is interesting to note that in English jurisprudence, from which the action originally became a part of our early common law, the present day employer-employee relationship, based upon contract rather than status, has been excluded from this theory of recovery. "The American courts, while certainly not unanimous, appear to be in substantial agreement with the [exclusion of the modern employer-employee relationship]. A number of courts have expressed disapproval of such action indicating a belief that it should either be discarded entirely or at least not extended. See annotation 57 A. L. R. 2d 802 et seq.; 53 Am. Jur. 2d, Master and Servant, Section 402; 57 C. J. S., Master and Servant Section 622." Nemo Foundations v. New River Co., supra at 151.

Narrowing the focus of the examination of the action at issue to Georgia law, we note that Code Ann. § 105-107 is but a declaration of the common law. *Bell v. Central R.,* 73 Ga. 520, 521 (1884). Indeed, the concept of the master's property interest in the servant as the basis for an action to recover for the servant's loss of services is apparent. "A master has a property right in the services of his servant; otherwise, he would not be entitled to recover damages for an invasion of such right." *Frazier v. Ga. R. &c. Co.,* 101 Ga. 70, 75 (28 SE 684) (1897). However, while the master's right to recover for the loss of services of the servant is acknowledged in the case law of Georgia, specific instances in which this actually occurs have been virtually nonexistent. Rather, the rule allowing recovery in this regard is most often stated by analogy in explanation of the legal fiction whereby a parent may recover for the loss of services of his child. See *Sorrells v. Matthews,* 129 Ga. 319 (58 SE 819) (1907); *Allen v. Atlanta St. R. Co.,* 54 Ga. 503 (1) (1875); *Shields v. Yonge,* 15 Ga. 349 (2) (1854);

*Crenshaw v. L. & N. R. Co.,* 15 Ga. App. 182 (82 SE 767) (1914).

The concept of a servant as property of the master is out of place in modern society. The relationship of employer-employee is based today on contract rather than ownership. Thus, the common law action embodied in Code Ann. § 105-107 is generally inapplicable to the modern employer-employee relationship. We find that the action against the tortfeasor is applicable, however, to those instances in which the inflicted tort was intentional. We also note that in a case such as the one at bar, the determination of any liability on behalf of the employer of the tortfeasor who committed the intentional tort would be governed by the applicable rules of the law of agency. While we further recognize that case law in Georgia allows a cause of action for the parent's recovery for the loss of services of a minor child where such loss is caused by a negligent act, we note that this is also re-enforced by statute. Code Ann. § 74-108 (a) (now OCGA § 19-7-1(a)) provides that until the age of majority, the child shall be under the control of the parents, "who are entitled to his services and the proceeds of his labor." We see no such special relationship between an employee and his employer today.

We believe this holding is consistent with current thought in this regard. "The authorities in the field seem to agree generally on the principle that if an employee is intentionally harmed, the employer may recover from the wrongdoer for the loss caused him because of his being deprived of the employee's services, but that the employer cannot recover if the injury is inflicted through mere negligence. 1 Harper & James, Tort § 6.10; Prosser, Torts (4th Ed.) § 129; Seavey, 'Liability to Master for Negligent Harm to Servant,' 1956 Wash. U. L. Q. 309." Steele v. J & S Metals, 32 Conn. Sup. 17 (335 A2d 629, 630) (1974). See Zawadzki v. Checker Taxi Co., 539 FSupp. 207 (N. D. Ill. 1982).

Moreover, this holding is not in conflict with the sparse case law in Georgia. First, the common law form of action to be brought for the master's recovery for the loss of his servant's services was "trespass vi et armis, per quod servitium amisit, that is, that the defendant has *by force* committed a trespass upon the person of the [servant], whereby the plaintiff has sustained the loss of his service." (Emphasis supplied.) *Frazier v. Ga. R. &c. Co.,* supra, at 73. The term "trespass vi et armis" is the common law action for damages for an injury committed with immediate and direct force against the plaintiff or his property. Black's Law Dictionary 1675 (4th ed. 1968). The issue in *Frazier v. Ga. R. &c. Co.,* supra, involved the father's right to a cause of action for the loss of his minor child's services due to an allegedly negligent homicide. While the court allowed such an action and analogized it to the master-servant relationship, the Georgia

Supreme Court in that 1897 case used the following illustration: "Blackstone, vol. 2, book 3, top page 114, paragraph 4, says: 'In this case (referring to a tort committed on the servant), besides the remedy of an action of battery or imprisonment which the servant himself as an individual may have against the aggresssor, the master also, as a recompense for his immediate loss, may maintain an action of trespass vi et armis, in which he must allege and prove the special damage he has sustained by the beating of his servant, per quod servitium amisit, and then the jury will make him a proportionable pecuniary satisfaction'; in line with which, in Robert Mary's case, 9 Coke, 113a, Lord Coke lays down the rule to be: 'If my servant is beat, the master shall not have an action for this battery, unless the battery is so great that by reason thereof he loses the service of his servant, but the servant himself for every small battery shall have an action. . . .' "

This inference of intentional tort is further supported by the dicta in *Fluker v. Ga. R. &c. Co.,* 81 Ga. 461 (5) (8 SE 529) (1889), a rare case involving the master's cause of action for the loss of services of his servant. The court allowed that had he been able to show a loss of service or impairment of capacity to render service, the master may have had a right of action for an *assault and battery* committed upon his servant. Once again, the cause of action at issue was for an intentional tort.

The limitation of the applicability of the cause of action at issue to intentional torts is further supported by the requirement of foreseeability as relating to tort liability. The alleged tortfeasor cannot foresee, as a consequence of negligent acts toward an employee, injury to the employer and hence we can find no legal duty to the employer. See Nemo Foundations v. New River Co., supra at 152.

In pertinent part, the complaint states that appellee's employee ". . . failed to stop and crashed into the rear of the automobile" driven by appellant's employee. While the foregoing allegation is sufficient under our system of notice pleading to state a cause of action for negligence, we find nothing contained therein sufficient to allege an intentional tort. For the foregoing reasons, we affirm the trial court's grant of appellee's motion to dismiss for failure to state a claim upon which relief can be granted.

*Judgment affirmed. Quillian, P. J., McMurray, P. J., Birdsong and Sognier, JJ., concur. Banke, J., concurs in the judgment only. Shulman, C. J., Deen, P. J., and Carley, J., dissent.*

DECIDED MARCH 17, 1983 —
REHEARING DENIED APRIL 1, 1983 —

*W. Barry Williams, A. Stephenson Wallace,* for appellant.
*John I. Harper, James W. Purcell,* for appellee.

SHULMAN, Chief Judge, dissenting.

Under OCGA § 51-1-1 (Code Ann. § 105-101), defining a tort, appellant may have had a right to sue for the unlawful violation of a private, legal right, whether this was a tort related to contract or the pure tortious violation of a legal right. Therefore, I dissent.

DEEN, Presiding Judge, dissenting.

I must except to the majority's limiting the application of the common law action *per quod servitium amisit,* codified at OCGA § 51-1-9 (Code Ann. § 105-107), to cases involving intentional torts. I find no authority under Georgia law for such a limitation.

OCGA § 51-2-2 (Code Ann. § 105-108) provides that "every person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are commited by negligence or voluntarily." It appears to me that in applying these provisions, this court has generally had more difficulty finding a wilful, employee tortfeasor to have acted within the scope of his employment, than in cases involving alleged negligence. See *Jones v. Reserve Ins. Co.,* 149 Ga. App. 176 (253 SE2d 849) (1979); *Davis v. Childers,* 134 Ga. App. 534 (215 SE2d 297) (1975). Yet, relying upon the persuasive authority of other jurisdictions and narrowly reading the few Georgia cases where an employer tried to recover for the loss of his employee's services, the majority concludes that the employer may recover from the employer of the tortfeasor *only* where the tort was intentional.

The case law in Georgia simply does not rule out recovery for negligent injuries in cases such as the present one. In *Frazier v. Ga. R. &c. Co.,* 101 Ga. 70 (28 SE 684) (1897), the Supreme Court, in explaining the application of the action of trespass *vi et armis, per quod servitium amisit,* noted that the plaintiff would have to show negligent homicide and the loss of his service. In *Crenshaw v. L. & N. R. Co.,* 15 Ga. App. 182 (82 SE 767) (1914), this court likewise noted that the plaintiff had to show a loss of services to recover for an injury caused by the defendant's negligence. The salient point in *Fluker v. Ga. R. &c. Co.,* 81 Ga. 461 (8 SE 529) (1889), was that an action for an assault and battery committed upon a servant depended upon a showing of a loss of services; absolutely no significance was attached to the fact that the injury complained of was intentional rather than

negligent.

As acknowledged by the majority, an employer's cause of action for loss of an employee's services ultimately extends from the idea of *paterfamilias,* which was incorporated into the English common law by Bracton. The majority suggests that the foundation of the cause of action is antiquated because the modern employment relationship is based on contract and not status. It is clear, however, that the principal element of the doctrine, as incorporated into the common law, has not been that a master has a proprietary interest in the servant, *but rather in the services of the servant, an interest obtained by the master through the contract of employment.* As Blackstone commented, "[t]he reason and foundation upon which all this doctrine is built, seem to be the property that every man has in service of his domestics; acquired by the contract of hiring, and purchased by giving them wages." W. Blackstone, 1 *Commentaries on the Laws of England* * 417. As the above cases indicate, our appellate courts have adhered to that analysis, and have not limited application of the doctrine so as to exclude regular employment relationships. "The right of the master to the service of his servant is an incorporeal hereditament." *Frazier,* supra, at p. 77. Thus the two leading authorities as to common law relating to the question at hand, Lord Coke[1] and Blackstone,[2] agree generally that the gist of the action in this type of case is loss of *service.*

The majority apparently favors the position taken on this matter in other jurisdictions, relying heavily on the decision written by President Caplan of the West Virginia Supreme Court of Appeals in Nemo Foundations v. New River Co., 155 W.Va. 149 (181 SE2d 687) (1971), and has in our opinion misconstrued the existing, binding Georgia Supreme Court cases. Indeed, it comes perilously close to overruling these cases, which it, of course, cannot do, by its limitation on this cause of action. This court cannot designate as dicta principles propounded by the Supreme Court as ratio decidendi.

---

[1] Thomas Jefferson and most of the founding fathers considered Lord Coke as the father of the true science of jurisprudence. He differed with Blackstone's favoring of an all powerful sovereign parliament referring to these attorney advocates as "Blackstone Lawyers." Thomas Jefferson, *Writings* (Library Ed., Vol. XIV, p. 63.) On the other hand, Coke held the parliament as not absolutely sovereign and left the door open so it could be questioned.

[2] Sir Edmund Burke noted that more copies of Blackstone's *Commentaries on the Law* have been sold in the American Colonies than in the whole of England. See 150 Ga. Appeals Reports XL. As to which is more popular (Coke or Blackstone) is a debatable issue.

Notwithstanding the above, even if the cause of action exists only where an intentional tort occurs, the trial court erred in granting the defendant's motion to dismiss for failure to state a claim upon which relief can be granted. The plaintiff's complaint labels the injury neither negligent nor intentional; it simply alleges that the defendant's employee "failed to stop and crashed into the rear of the automobile being driven by the plaintiff's employees . . ." A complaint should be dismissed for failure to state a claim for relief only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Atlanta Assoc. v. Westminister Properties,* 242 Ga. 462 (249 SE2d 252) (1978); *Moultrie v. Atlanta Fed. Sav. &c. Assn.,* 148 Ga. App. 650 (252 SE2d 77) (1979). Because the complaint here does not rule out a set of facts involving an intentional tort, under the majority's own reasoning, dismissal of the complaint was improper.

For the above reasons, I respectfully dissent.