## 68404. RISDON ENTERPRISES, INC. v. COLEMILL ENTERPRISES, INC. et al.

### (324 SE2d 738)

McMURRAY, Chief Judge.

Which law should we apply to a tort action in which it is alleged that the defendants' negligent conduct in Georgia caused plaintiff's employee to be killed in a South Carolina airplane crash? Can an employer recover from a wrongdoer for the loss of a key employee's services under the common law? These questions are presented in the case sub judice.

Plaintiff brought suit against defendants pursuant to the Georgia Long Arm Statute. Plaintiff is a Delaware corporation with its principal place of business in South Carolina. The individual defendants are residents of South Carolina. The corporate defendants are either South Carolina, Tennessee or North Carolina corporations. None of the corporate defendants are registered to do business in Georgia.

In its complaint, plaintiff alleged that one of its key employees, Marvin Maxwell, was killed in an airplane crash in South Carolina on November 2, 1979; that defendants Dickerson Associates ("Dickerson"), a limited partnership, and Bankair, Inc. ("Bankair") negotiated for the purchase of the airplane with the airplane's owner, defendant Southeastern Flight Services, Inc. ("Southeastern"), through Southeastern's broker, defendant Colemill Enterprises, Inc. ("Colemill"); that delivery of the airplane was made on October 25, 1979, at the DeKalb-Peachtree Airport in DeKalb County, Georgia; that the airplane was to be owned by Dickerson and operated by Bankair in regularly scheduled commuter air service in Georgia, South Carolina and North Carolina; that at the time of the delivery of the airplane to Bankair in DeKalb County, Colemill, by and through its agent, Ray Williamson, participated with a Bankair pilot in a start-up, run-up, test flight and shut-down of the airplane; that Williamson instructed the Bankair pilot on procedures to be used during the operation of the airplane; that Southeastern and Colemill knew or should have known that the airplane was not airworthy; that Southeastern and Colemill either negligently failed to inspect, test and repair the airplane prior to its delivery or they intentionally concealed its unairworthy condition from Dickerson and Bankair; that the instruc-

tions given by Williamson to the Bankair pilot concerning the operation of the airplane were incorrect and contrary to established and recognized operating procedures; and that the result of the incorrect instructions was to prevent the detection of the unairworthy condition of the airplane.

It was further alleged that Bankair, Dickerson and Dickerson's partners should have known that the airplane was not airworthy; that Dickerson and its partners negligently failed to inspect, test and repair the airplane prior to its delivery to Bankair; and that Dickerson and its partners, as owners of the airplane, were negligent per se in maintaining the airplane in an unairworthy condition in violation of Federal Aviation Regulations.

The complaint also alleged that Bankair should have known the airplane was not airworthy; that it failed to inspect, test and repair the airplane prior to its November 2, 1979, commercial flight; that the November 2, 1979, flight was scheduled from Greenville, South Carolina to Columbia, South Carolina; that during the November 2, 1979, flight Bankair's agents used improper operating procedures and improper emergency procedures resulting in the loss of control of the airplane; and that Bankair was negligent per se in that it violated Federal Aviation Regulations.

Finally, plaintiff alleged that the negligent conduct of the defendants caused the plaintiff to lose the services of a valuable employee and the financial benefits of that service. In its prayer for relief, plaintiff demanded damages of $500,000.

Defendants, with the exception of defendant Southeastern, moved to dismiss the complaint on the ground, inter alia, that it failed to state a claim upon which relief could be granted. The trial court granted defendants' motion to dismiss the complaint and this appeal followed. *Held*:

1. Under Georgia law, the lex loci delicti determines the substantive rights of the parties. *Ohio Southern Express Co. v. Beeler*, 110 Ga. App. 867, 868 (1) (140 SE2d 235). How do we determine the lex loci delicti where the tort is transitory in nature? The general rule is that "the place of wrong, the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place." 15A CJS 459, Conflict of Laws, § 12 (2) (b). Georgia follows the general rule: In *Wardell v. Richmond Screw Anchor Co.*, 133 Ga. App. 378 (210 SE2d 854), we observed that " 'The law of the place where the tort or wrong has been committed is the law by which the liability is to be determined, and the place of the wrong is the place where . . . there takes place the last event necessary to make an actor liable for an alleged tort.' " *Wardell v. Richmond Screw Anchor*

*Co.*, supra at p. 380, quoting Brooks v. Eastern Air Lines, 253 FSupp. 119, 121 (N.D. Ga. 1966).

Under the allegations of the complaint, the last event necessary to make defendants liable for the alleged tort, i.e., the airplane crash, occurred in South Carolina. Accordingly, the substantive law of South Carolina is controlling. *Ohio Southern Express Co. v. Beeler*, 110 Ga. App. 867, 868 (1), supra; *Green v. Johnson*, 71 Ga. App. 777 (32 SE2d 443). (Although the complaint alleges the negligent conduct of defendants primarily occurred in Georgia, certain negligent acts attributable to defendant Bankair must necessarily have occurred in South Carolina just prior to the airplane crash. Nevertheless, in ruling that the substantive law of South Carolina is applicable, we have assumed arguendo that the primary negligent conduct took place in Georgia.)

Relying upon Baltimore Football Club, Inc. v. Lockheed Corp., 525 FSupp. 1206 (N.D. Ga. 1981), plaintiff urges that we carve out an exception to lex loci delicti in airplane crash cases. In the Baltimore Football Club case, the plaintiff purchased an airplane which was manufactured by Lockheed at its facility in Marietta, Georgia. Thereafter, certain defects were discovered in the mainframes of the airplane. The defects were repaired at a Lockheed Service Center in Appleton, Wisconsin. Plaintiff brought suit against Lockheed seeking damages for the defective frame under negligence and strict liability theories. Lockheed filed a motion for judgment on the pleadings on the assumption that Georgia law was to be applied. Plaintiff responded to the motion arguing that Wisconsin law was applicable. The district court resolved the conflict in favor of Georgia law. In so ruling, the court reasoned that the "actual situs of the place of injury — i.e., the exact location of the airplane when the cracks occurred — is basically impossible to determine." Baltimore Football Club, Inc. v. Lockheed Corp., 525 FSupp. 1206, 1208 (3), supra.

In the case at bar, unlike the Baltimore Football Club case, the situs of the last event necessary to make defendants liable for the alleged tort is determinable easily. Although we may be persuaded to apply the Baltimore Football Club rationale to a products liability aviation case, we decline to depart from the lex loci delicti in airplane crash cases.

2. Where the rights of parties depend upon South Carolina law, and no statute of that state is pleaded or proved, this court will presume that the common law is to be applied there. *White v. White*, 41 Ga. App. 394 (1) (153 SE 203). In Burgess v. Carpenter, 2 SC 7 (1870), the Supreme Court of South Carolina determined that under the common law an employer could not bring a cause of action against a tortfeasor for an injury inflicted upon the employer's servant except where the servant was a menial one. In the words of the court: "The relation of master and servant, as it existed in England,

was wholly different from the relation of employer and employed as it exists in this country. At common law, in England, the master might bring an action for damages against a third party for any loss he might have sustained by reason of such party unlawfully injuring or interfering with his servant or servants; but this power, given the master, was only to be exercised toward menial servants — *domestics infra moenia*." Burgess v. Carpenter, 2 SC 7, 9, supra.

"While the courts of this State will follow the decisions of a sister State in construing the statutes thereof, they are not bound by the interpretation placed upon the common law by the courts of other States." *Lay v. Nashville, Chattanooga &c. R. Co.*, 131 Ga. 345 (1) (62 SE 189). Accordingly, we have reviewed South Carolina's interpretation of the common law right of an employer to sue a tortfeasor for injuries inflicted upon an employee. We conclude that that interpretation as set forth in Burgess v. Carpenter, 2 SC 7, supra, is eminently correct. As we recently observed in *Ireland Elec. Corp. v. Ga. Hwy. Express*, 166 Ga. App. 150, 152 (303 SE2d 497): "The concept of a servant as property of the master is out of place in modern society. The relationship of employer-employee is based today on contract rather than ownership. Thus, the common law action embodied in [OCGA § 51-1-9] is generally inapplicable to the modern employer-employee relationship." Since, at common law, an employer has no right to sue a tortfeasor for injuries inflicted upon a key employee, plaintiff's action must fail.

Plaintiff contends that, the common law rule notwithstanding, the trial court erred in dismissing its complaint against defendants Colemill and Southeastern because the complaint alleged that those defendants committed *intentionally* tortious acts by concealing the unairworthy condition of the airplane from Dickerson and Bankair. It is true that the form of action at common law to recover for the loss of a servant's services (trespass vi et armis) is akin to an intentional tort. However, such a common law action concerned a physical injury, i.e., "an injury committed with immediate and direct force against the plaintiff or his property." *Ireland Elec. Corp. v. Ga. Hwy. Express*, 166 Ga. App. 150, 152, supra. In the case sub judice, it was not alleged that defendants used such "direct force."

Plaintiff contends the application of *Ireland Elec. Corp. v. Ga. Hwy. Express*, 166 Ga. App. 150, supra, to the facts of this case gives rise to a violation of the equal protection clauses of the state and federal constitutions. Essentially, plaintiff argues that it is unreasonable to allow a person to recover for negligent acts causing harm to his wife or child while only allowing a person to recover for intentional acts directed against his servant.

" 'It is only in cases where laws are applied differently to different persons under the same or similar circumstances that the equal

protection of the law is denied. [Cits.]' *Baugh v. City of LaGrange*, 161 Ga. 80 (2a) (130 SE 69). Thus, it is recognized that 'Classification is permitted, provided it be upon any reasonable basis.' [Cit.]" *City of Calhoun v. North Ga. Elec. Membership Corp.*, 233 Ga. 759, 770 (213 SE2d 596). We think that different treatment of the family and master-servant relationships is reasonably based. An employment relationship is a business relationship; it is founded upon the market place. The family relationship on the other hand, is based upon ties of love and affection; its bonds are deeper and more permanent. Thus, persons in a family relationship and persons in an employment relationship are not in the same or similar circumstances. The difference in their circumstances justifies a different approach to the law of torts. Accordingly, application of the common law rule set forth in *Ireland Elec. Corp. v. Ga. Hwy. Express*, 166 Ga. App. 150, supra, does not violate equal protection principles.

The trial court did not err in granting defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

3. In view of our holding in Divisions 1 and 2, the remaining enumerations of error are moot.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

Decided November 13, 1984 —
Rehearing denied December 7, 1984

*Elmer A. Simpson, Jr., Richard C. Mitchell*, for appellant.
*Michael R. Johnson, Edgar A. Neely III, Alvin E. Domash*, for appellees.