Robert **BRENNER,** Russ Hanson, and Craig Walter, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

FUTURE GRAPHICS, LLC; Richard J. Morrell (a/k/a Nick Morrell and Nicholas Cascario); Judy Morrell (a/k/a Cathy Morrell and Cathy Grasso); Rick Cascario; Holiday Enterprises Inc.; Holiday Ink, Inc.; Holiday Ink for Less, Inc.; Holiday Ink Half Price, Inc.; Holiday Ink and Toner, Inc.; American Ink, Inc.; and United Locations of America, Inc., Defendants.

Civil Action No. 1:06–CV–0362–CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 10, 2007.

itself available to sign any further necessary orders in advance of that date.

Corey Daniel Holzer, Michael Ira Fistel, Jr., Holzer, Holzer & Fistel, LLC, David J. Hungeling, Law Office of David J. Hungeling, Atlanta, GA, for Plaintiffs.

Richard J. Morrell, Suwanee, GA, pro se.

Judy Morrell, Suwanee, GA, pro se.

## ORDER

CHARLES A. PANNELL, JR., District Judge.

This action is before the Court on the plaintiffs' motion for class certification [Doc. No. 152] and Defendant Future Graphics LLC's motion for summary judgment [Doc. No. 122].

## I.  FACTUAL BACKGROUND

The plaintiffs brought this action setting forth causes of action under federal and state Racketeering Influenced and Corrupt Organizations Acts ("RICO") as well as state law claims for civil conspiracy, breach of warranty, breach of contract, and unjust enrichment [Doc. No. 1]. The plaintiffs are individuals who purchased business opportunities from defendants Richard Morrell, his family members, and his corporate entities (the "Morrell

Defendants").[1]   Essentially, the plaintiffs purchased the opportunity to become distributors of Future Graphics' remanufactured ink cartridges.  The named plaintiffs seek to represent a class of distributors of Future Graphics ink products.  The potential class consists of more 500 members who, the named plaintiffs allege, invested millions of dollars but were provided with worthless product.

According to the complaint, the defendants sold the plaintiffs and proposed class members what was represented to be a turn-key business opportunity.  The investors paid the Morrell Defendants a fixed sum of money in exchange for the opportunity to sell and distribute a line of Future Graphics' ink cartridges guaranteed to generate monthly income through the resale of the ink products to retail customers.

After making full payment to the Morrell Defendants for the initial shipment of goods, an investor would receive the goods directly from Future Graphics.  Meanwhile, the Morrell Defendants would pay Future Graphics for the goods immediately upon shipment.  According to the plaintiffs, Future Graphics would ship only defective, unmerchantable products directly to the investor.

The plaintiffs further allege that upon the receipt of complaints and demands for refunds, the corporate entities set up by Defendant Richard Morrell began to go out of operation.  Thus, the plaintiffs contend that they are left with no recourse against the entities that received money in exchange for worthless goods.

## II.  LEGAL ANALYSIS

### A.  Motion for Class Certification

The plaintiffs have proposed a class with the following definition: "All persons or entities that purchased a business opportunity to distribute Defendants' ink-cartridge products" (the "Class").  The Morrell Defendants did not file responsive pleadings as to the plaintiffs' motion for class certification.  Therefore, only Future Graphics opposes class certification.

■  Class certification is governed by Federal Rule of Civil Procedure 23.  Subsection (a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four requirements are commonly referred to as "the prerequisites of numerosity, commonality, typicality, and adequacy of representation."  *General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).  The burden of proving these prerequisites is on the party seeking class certification.  *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir.1996).

Rule 23(b) provides that, in addition to the Rule 23(a) prerequisites, a class must fall into one of three categories: (1) the pursuance of separate actions would create a risk of inconsistent verdicts or would, as a practical matter, make individual adjudications dispositive of the interests of class members who are nonparties; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the putative class such that declaratory or injunctive relief with respect to the class as a whole would be appropriate; or (3) questions of law or fact common to members of the class predominate over issues affecting individual members, and class adjudication is preferable to other methods of litigation for purposes of a fair and efficient resolution of the controversy.

■  And finally, prior to the certification of a class, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.  *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir.

---

1.  The "Morrell Defendants" consist of all named   defendants other than Future Graphics, LLC.

2000). To have standing, a named plaintiff must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975),

### 1. Rule 23(a)

#### a. Numerosity

■ The numerosity requirement simply asks whether there are so many members of the class that joinder of them all would be impracticable. Fed.R.Civ.P. 23(a)(1). Factors determining whether joinder of class members is practicable include the size of the class, the geographical dispersion of the class, the ease with which class members may be identified, and the nature of the action and the size of each class member's claim. *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981).

■ The plaintiffs allege that at least 400 or more persons or entities purchased a business opportunity to distribute the defendants' ink cartridge products. The plaintiff has provided a list of proposed Class members with their contact information [Doc. 152 at Ex. G].

Future Graphics makes no challenge to the actual number of class members. Rather, Future Graphics argues that the plaintiffs have failed to establish that the alleged class is readily ascertainable. This argument is without merit as the plaintiffs have already identified the potential class members. Moreover, Future Graphics can identify the potential class members by examining its own sales and shipping records. Accordingly, the court finds that the proposed Class meets the numerosity prerequisite of Rule 23(a).

#### b. Commonality

■ To satisfy the commonality requirement, the plaintiffs must show that there are questions of law or fact common to the entire class. Fed.R.Civ.P. 23(a)(2). It is not necessary that all questions of law and fact be common. *National Broadcasting Co. v. Cleland,* 697 F.Supp. 1204, 1216 (N.D.Ga.1988); *Strube v. American Equity Investment Life*

*Insurance Co.,* 226 F.R.D. 688, 695 (M.D.Fla. 2005).

The defendants do not contest commonality. Furthermore, the court finds that the commonality requirement is met because questions common to the class will include, *inter alia,* whether the defendants conspired to fraudulently induce the class members to purchase worthless business opportunities.

#### c. Typicality

■ A class representative's claims or defenses must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). Typicality is related to the element of commonality, but focuses on the "individual characteristics of the named plaintiff in relation to the class." *Prado–Steiman,* 221 F.3d at 1279. A representative's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* However, typicality does not require identical claims or defenses, and minor factual variations will not render a class representative's claim atypical. *Id.*

■ Future Graphics argues that none of the named plaintiffs were subject to the fraudulent conduct alleged in the complaint. Specifically, Future Graphics points out that none of the named plaintiffs spoke to Future Graphics' employees posing as references and none of the named plaintiffs attended training sessions hosted by Future Graphics.

Future Graphics is attempting to carve out specific allegations of conduct to argue that the named plaintiffs' claims do not satisfy the typicality prerequisite. This approach ignores the allegations that Future Graphics partnered with the Morrell Defendants to carry out the entire scheme of exchanging worthless goods for money.

The alleged scheme was carried out in virtually the identical way for each purchaser

of a business opportunity. Because the named plaintiffs' claims arise from the same course of conduct as the claims of the proposed class members, the typicality prerequisite is satisfied.

#### d. Adequacy of Representation

■ As the final prerequisite under subsection (a), the class representative must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The underlying purpose behind this requirement is to assure that the legal rights of absent class members are protected. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987). This requirement is generally met if (1) the class representatives do not have interests antagonistic to other class members, and (2) plaintiffs' counsel can adequately represent the interests of the class. *Id.* Additionally, class representatives must possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative. *Id.*

The defendants do not contest the adequacy of the Class representatives or counsel in this action, and there is no reason to believe that any conflict of interest will arise between the Class representatives and members of the proposed Class or that Class counsel will fail to adequately represent the plaintiffs. For the foregoing reasons, the court finds that the adequacy of representation requirement is met.

#### 2. Rule 23(b)

The plaintiffs argue that class certification is appropriate in this case because questions of law or fact common to members of the class predominate over issues affecting individual members and class adjudication is preferable to other methods of litigation for purposes of a fair and efficient resolution of the controversy. Fed.R.Civ.P. 23(b)(3). The defendants, on the other hand, argue that individual facts predominate with respect to each of the plaintiffs' claims and that individual actions would be the superior method to resolve the claims.

■ To satisfy the predominance requirement, the plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997) (citations and quotation marks omitted).

The superiority requirement in Federal Rule of Civil Procedure 23(b)(3) directs the court's attention to "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir.2004). The superiority requirement is grounded in the idea that the litigation is to be carried out as efficiently and as fairly as possible for all parties. *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

The court will examine each category of claims to determine the predominance and superiority issues.

#### a. RICO Claims

##### (i) Predominance

■ Future Graphics argues that individual proof from each and every class member will be required to establish mail and wire fraud, two of the predicate acts the plaintiffs have alleged in support of their Federal and State RICO claims. Specifically, Future Graphics contends that each Class member will have to prove individual reliance to demonstrate mail and wire fraud. The Eleventh Circuit has held, however, that "the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification." *Klay*, 382 F.3d at 1258. Also alleged by the plaintiff, but ignored by Future Graphics, are the following predicate acts: witness tampering, interstate and foreign travel in aid of a racketeering enterprise, and engaging in monetary transactions in property derived from specified unlawful activity [Doc. No. 1 at 39]. Importantly, these predicate acts do not hinge on individual reliance as an element of proof.

Moreover, the RICO allegations by the plaintiffs are that the defendants undertook a single scheme to defraud would-be entrepre-

neurs. The plaintiffs allege that in perpetrating that scheme, the defendants utilized uniform and systematic marketing techniques, standardized forms, scripts and contracts, and false references to defraud the Class members of millions of dollars. The allegation of a single fraudulent scheme in which the defendants reached out to Class members in at least forty-four states and convinced each member to exchange money for worthless products is the type of claim the Eleventh Circuit has found to be "particularly appropriate for class action." *Kirkpatrick*, 827 F.2d at 725.

Furthermore, there are a multitude of common legal and factual issues that must be resolved in litigating the plaintiffs' RICO claims against the defendants. For example, the following is a non-exhaustive list of the issues common to all Class members:

whether the defendants were associated with an enterprise;

whether the alleged enterprise affected interstate commerce;

whether the defendants participated in the conduct of the alleged enterprise's affairs;

whether the defendants' participation in the alleged enterprise's affairs was through a pattern of racketeering activity;

whether the defendants operated an enterprise through an association-in-fact;

whether the defendants' business entities constitute enterprises;

whether the defendants engaged in a pattern of racketeering activity; and

whether the defendants committed the alleged predicate acts.

In its response in opposition to the motion for class certification, Future Graphics points out distinctions between the marketing materials that targeted each of the named plaintiffs and the different individuals employed by the defendants with whom each plaintiff had contact. Additionally, Future Graphics argues that each class member will be required to demonstrate their own individual reliance on deceptive conduct in furtherance of an alleged RICO scheme. Future Graphics is correct that individualized issues are present in this litigation. But, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *In re Theragenics Corp. Securities Litigation*, 205 F.R.D. 687, 697 (N.D.Ga.2002).

As set forth above, the overwhelming number of factual and legal issues are common to the Class members. Furthermore, those factual and legal issues that focus on the activities of the defendants rather than the activities of the plaintiffs are common to all class members. Therefore, this court finds that with regard to the Federal and State RICO claims, common issues of law and fact predominate.

### (ii) Superiority

Rule 23(b)(3) requires the plaintiffs to show that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Future Graphics argues that the individual issues associated with establishing the existence of causation and damages by each class member would make the case unmanageable and the availability of treble damages and attorneys' fees under RICO would make even small individual claims economically feasible. Thus, according to Future Graphics, individual suits brought be each class member separately would be superior to a class action.

As set forth above, this court has already determined that common issues of law and fact predominate over individual issues with regard to the plaintiffs' RICO claims. This finding weighs heavily in favor of a finding of superiority of the class action because "the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay*, 382 F.3d at 1269.

Additionally, Rule 23(b)(3) contains a list of four factors to be considered by the court in making the superiority analysis:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already com-

menced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

Because there is nothing to indicate that individual class members desire to control their own litigation, the first factor weighs in favor of finding the class action to be superior. Likewise, the second factor, prior litigation already commenced, does not weigh against a finding of superiority of the class action. While the court is aware that prior to this action being filed, individuals did file lawsuits against the Morrell Defendants raising claims similar to those asserted in the instant suit, it is the court's belief that these suits have been completely adjudicated.

■ The third factor, desirability of concentrating the litigation in a particular forum, involves three considerations: (1) economies of time, effort, and expense; (2) aggregation of a large number of claims make it economical to bring suit; and (3) preliminary matters already handled in this forum. *Klay*, 382 F.3d at 1270–71. Because this court has found that common issues of law and fact predominate the plaintiffs' RICO claims, time, effort and expense will be saved through a class action and thus make a single forum desirable. There is no economical incentive for conducting this litigation in one particular forum because, as pointed out by Future Graphics, the availability of treble damages and attorneys' fees on the RICO claims makes the amount in controversy significant enough that individual class members would likely pursue claims individually. And, there is no particular advantage to concentrating claims in this court because there have been very few preliminary matters addressed at this point in the litigation.

Thus, the desirability factor does not weigh in favor of a class action. However, Future Graphics has offered the court nothing to indicate the undesirability of litigating all the claims in this forum. This is not a case in which defendants will be subject to an unjustly harsh verdict for accidental behav-

ior. Rather, the claims here are RICO violations and are therefore predicated on criminal acts. *See Klay*, 382 F.3d at 1271–72. Thus, there are no reasons to find an undesirability in litigating the plaintiffs' RICO claims in this forum. Accordingly, the court finds the third factor in the superiority analysis to be neutral.

The fourth and final factor of the superiority analysis is manageability. Fed.R.Civ.P. 23(b)(3)(D). However, "[t]his concern will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay*, 382 F.3d at 1272. Moreover, Future Graphics has not raised any manageability issues, and the court is unaware of any unsurmountable obstacles in managing the RICO claims as a class action.

Three of the four factors set forth in Rule 23(b)(3) regarding the superiority of adjudicating the plaintiffs' RICO claims as a class action weigh in favor of a finding that a class action is the superior method. The remaining factor is neutral. Accordingly, the court finds that a class action is the superior method of resolving the plaintiffs' RICO claims.

■ Finally, the court finds that the three named plaintiffs, Brenner, Hanson, and Walter, have Article III standing to assert the RICO claims because each was an individual who became a victim of the alleged scheme to exchange worthless product for money perpetrated by the defendants.

Because the court found the predominance of common issues of law and fact within the RICO claims, the superiority of the class action as a method of adjudicating these claims, and standing on behalf of the named plaintiffs, the motion for certification of the Class with regard to Counts 1 and 2 is GRANTED.

### b. Civil Conspiracy Claims: (Count 4)

Count 4 of the complaint alleges that "[w]ith regard to their acts and omissions, breaches and torts, defendants have all covertly and clandestinely conspired and acted in concert for the purposes of accomplishing both unlawful ends and lawful ends through unlawful means" [Doc. No. 1 at 56].

**(i) Predominance**

██ Future Graphics contends that the plaintiffs have failed to show that common issues of law or fact predominate with regard to these claims. First, Future Graphics argues that individual elements of factual proof would overwhelm any commonality within the civil conspiracy claims. Next, Future Graphics asserts that significant variations in the conspiracy laws applicable to the class members' claim preclude a finding of predominance.

The court will address the issues of law first because if the laws of forty-four different states apply to the class members' civil conspiracy claims, as Future Graphics contends, a finding of predominance could not be justified. "A federal court faced with the choice of law issue must look for its resolution to the choice of law rules of the forum state." *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.,* 713 F.2d 1500, 1503 (11th Cir.1983) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Because a civil conspiracy claim depends upon an underlying tort, *Mustaqeem–Graydon v. SunTrust Bank,* 258 Ga.App. 200, 573 S.E.2d 455, 461 (2002), this court will look to how Georgia courts determine the applicable law in tort cases.

██ Georgia follows the traditional doctrine of *lex loci delicti. Dowis v. Mud Slingers, Inc.,* 279 Ga. 808, 621 S.E.2d 413, 419 (2005). "The general rule is that 'the place of the wrong, the *locus delecti,* is the place where the injury was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for the alleged tort takes place.'" *Risdon Enterprises, Inc. v. Colemill Enterprises, Inc.,* 172 Ga.App. 902, 324 S.E.2d 738, 740 (1984). Under this theory, the law of the jurisdiction where each class member suffered harm would apply to the civil conspiracy claims.

██ "Georgia's choice of law system, however, has an unusual characteristic: 'the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes.'" *In re Tri–State Crematory Litigation,* 215 F.R.D. 660, 677 (N.D.Ga. 2003) (quoting *Frank Briscoe Co., Inc.,* 713 F.2d at 1503). "When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.; accord Kirkpatrick,* 827 F.2d at 725 n. 6 ("If a particular state does not have a controlling statute, however, the Georgia choice of law rule requires application of the common law as construed by the courts of Georgia.")

Neither party has referred the court to any statutes of foreign states pertinent to the civil conspiracy claims.[2] Therefore, Georgia's choice of law rules require application of Georgia law unless such application is inconsistent with due process.

To determine whether application of Georgia law to the plaintiffs' civil conspiracy claims is inconsistent with due process, the court must analyze whether the State of Georgia has "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [Georgia] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821–22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Here, all the defendants either resided in Georgia or maintained an office in Georgia. All the investment monies were mailed or wired by the Class members to Georgia, and payments to Future Graphics by the Morrell Defendants were mailed or wired from Georgia. The court finds these extensive contacts sufficient to conclude that application of Georgia law to the civil conspiracy claims is not inconsistent with due process. Accordingly, common issues of law predominate within the plaintiffs' civil conspiracy claims.

██ Turning to issues of fact, this court must determine whether the factual proof

---

2. Where no statute of a foreign state has been pleaded, this court presumes that the law of Georgia applies. *In Re Tri–State Crematory Litigation,* 215 F.R.D. at 678 n. 6 (citing *Avnet, Inc. v. Wyle Labs., Inc.,* 263 Ga. 615, 437 S.E.2d 302, 306 (1993)).

necessary to establish the civil conspiracy is common to the class members to the extent that these common issues predominate over individual factual issues. Future Graphics makes the conclusory argument that "causes of action which underlie Plaintiffs' conspiracy claim are fraught with individual issues and not appropriate for classwide adjudication" [Doc. No. 184 at 28].

To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. *J. Kinson Cook of Georgia, Inc. v. Heery/Mitchell,* 284 Ga.App. 552, 644 S.E.2d 440, 448 (2007). The factual proof necessary to establish that the defendants were acting in concert are common issues as to all Class members.

The elements of the underlying tort in this case, fraud, are: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Argentum International, LLC v. Woods,* 280 Ga.App. 440, 634 S.E.2d 195, 200 (2006). The first three elements focus specifically on the conduct, knowledge, and intent of the defendants. Thus, the factual proof on these three elements will involve common issues more so than individual issues.

The final two elements of fraud, justifiable reliance and damages, focus on each individual Class member. Proving these elements will necessarily involve individualized factual issues. However, it is well-established in the Eleventh Circuit that class certification is not barred merely because reliance is an element in a cause of action. *Klay,* 382 F.3d at 1258. Likewise, "the presence of individualized damages issues does not prevent a finding that common issues in the case predominate." *Id.* at 1259 (quoting *Allapattah Services v. Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir.2003)).

The weight of the elements necessary to establish civil conspiracy including the underlying tort call for factual proof that is common to all the class members. Therefore, the court finds that common issues of fact are predominant as to the plaintiffs' claims for civil conspiracy.

### (ii) Superiority

The same considerations of superiority of the class action discussed in reference to the plaintiffs' RICO claims apply to the plaintiffs' civil conspiracy claims. Thus, for the same reasons set forth above, the court makes a finding that a class action is the superior method to adjudicate the plaintiffs' civil conspiracy claims.

Finally, the court finds that the named plaintiffs have standing to raise the civil conspiracy claims because each was a victim of the alleged scheme to exchange money for worthless product perpetrated by the defendants. Therefore, the motion for certification of the Class as to Count 4 is GRANTED.

### c. Warranty Claims: Counts 6, 7 and 8

### (i) Predominance

The complaint sets forth three breach of warranty causes of action: express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose [Doc. No. 1 at 58–62]. Future Graphics argues that individual issues predominate with regard to the factual proof supporting the plaintiffs' warranty claims. According to Future Graphics, each and every ink cartridge received by each and every class member must be inspected to determine the supplier and the defect.

The court is not troubled by questions regarding the identity of the suppliers because the plaintiffs allege that Future Graphics shipped every ink jet cartridge at issue in the case. However, the identity of the defect is more problematic. In the complaint, the plaintiffs allege that Future Graphics shipped them "rejected, outdated, defective, castoff and otherwise unmerchantable product" [Doc. No. 1 at 17]. The defects alleged in the complaint are varied: insufficient ink; weak, old or separated ink; insufficient printing color; broken cartridge cases; and complete failure to print [Doc. No. 1 at 25].

The plaintiffs sum up the defects of the ink cartridges shipped to them by calling them "junk." However, to establish a breach of warranty, express or implied, the plaintiffs must demonstrate a defect. *See* Uniform Commercial Code §§ 2–313, 2–314, 2–315. This is true regardless of what state's laws are applicable to each class members' warranty claims.[3]

This is not a case in which a single defect is contained within every identical product such as a tire with a faulty tread. Rather, the plaintiffs have alleged that they received shipments in which some ink jet cartridges were damaged, some were half full, some printed gray, and still others did not print at all. Thus, the factual issues with regard to proving a product defect are going to be individualized and dependent upon the make-up of each shipment sent to each Class member. Notably, the plaintiffs have not cited a single case in which warranty claims have been certified for class action where numerous different products exhibited various defects. Accordingly, this court cannot conclude that common legal and factual issues predominate as to the plaintiffs' warranty claims.

**(ii) Superiority**

Given the predominance of individual issues of fact within the plaintiffs' warranty claims, the court cannot conclude that a class action is the superior method of adjudicating these claims. Therefore, the motion for certification of the class with respect to Counts 6, 7, and 8 is DENIED.

**d. Contract Claims (Counts 9 & 10)**

**(i) Predominance**

■ Future Graphics contends that the plaintiffs have failed to show that common issues of law or fact predominate with regard to the plaintiffs' contract claims. First, Future Graphics argues that the same individual elements of factual proof regarding the defects discussed above would overwhelm any commonality within the contract claims.

Next, Future Graphics asserts that significant variations in the contract laws applicable to the class members' claims preclude a finding of predominance.

With regard to issues of law, the parties disagree on what law would be applied to the contract claims. However, given the uniform nature of contract law through the various states, even if the laws of each of the states in which the class members reside were to be applicable, there would likely be such similarity in the law that the court would not find that individual issues of law predominate. However, in order to factually establish a breach of contract, the plaintiffs would have to demonstrate that they were supplied with defective products. Thus, the same individual factual issues as discussed in connection with the warranty claims would arise within the contract claims. Therefore, individual issue of fact predominate within the plaintiffs' contract claims.

**(ii) Superiority**

Given the predominance of individual issues of fact within the plaintiffs' contract claims, the court cannot conclude that a class action is the superior method of adjudicating these claims. Therefore, the motion for class certification with respect to Counts 9 and 10 is DENIED.

**e. Unjust Enrichment Claims (Count 11)**

■ The plaintiffs' unjust enrichment claims allege that "Defendants have wrongfully and unlawfully enriched themselves to Plaintiffs' and the Class members' detriment by engaging in, and continuing to engage in, the above-described wrongful course of conduct for their own commercial benefit and enrichment" [Doc. No. 1 at 68]. Unjust enrichment claims are merely an alternative to breach of contract claims. *Tidikis v. Network for Medical Communications & Research LLC,* 274 Ga.App. 807, 619 S.E.2d 481, 485 (2005). Moreover, the "facts necessary

---

3. The court notes that the parties disagree on whether Georgia law applies to all warranty claims or whether the court would be required to apply the laws of various states according to where each member executed the distributorship agreements. However, given the vast individualization of the factual issues within the warranty claims, the court does have to reach this issue.

to support the two types of claims are almost identical." *Klay,* 382 F.3d at 1267. Therefore, the same individualized factual issues that prevented the breach of contract claims from being certified compel this court to decline to certify the unjust enrichment claims. Accordingly, the motion for class certification is DENIED a to Count 11.

## B. Motion for Summary Judgment

Because the court has certified the Class with respect to the RICO and civil conspiracy claims, new plaintiffs will be joining the suit as to these claims. Furthermore, remedies of punitive damages and attorneys fees will be available to the Class if it is successful on the two underlying claims. Accordingly, the court finds that ruling on Future Graphics' motion for summary judgment as to the RICO and civil conspiracy claims asserted by only the named plaintiffs would be a waste of judicial resources. Therefore, the motion for summary judgment as it pertains to the RICO claims (Counts 1 and 2), the civil conspiracy claims (Count 4), and the claims for punitive damages and attorneys' fees (Count 14) is DENIED with leave to renew at the conclusion of the notice and discovery stages with regard to the Class.

As to the warranty, contract, and unjust enrichment claims set forth by the named plaintiffs, the court will address the motion for summary judgment. These claims are not certified as to the Class, and therefore, they are ripe for summary judgment review at this time.

Rule 56(c) of the Federal Rules of Civil Procedure authorizes a court to enter summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute exists as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This burden is discharged by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met its burden, a district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton,* 74 F.3d 1087, 1090 (11th Cir.1996). Once the moving party has adequately supported its motion, the nonmovant has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 248, 106 S.Ct. 2505. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. *Id.*

Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. When the record as a whole could not lead a rational trier of fact to find for the nonmovant, there is no "genuine issue for trial." *Id.* (citations omitted).

## 1. Warranty Claims

Future Graphics argues that it is entitled to summary judgment with regard to all of the plaintiffs' breach of warranty claims. Specifically, Future Graphics argues that there are no factual questions as to the following issues: (1) the plaintiffs lack privity with Future Graphics; (2) Future Graphics made no warranty to the plaintiffs; (3) there is no evidence of defects or that Future Graphics manufactured the allegedly defective ink cartridges; (4) the plaintiffs did not

suffer damage related to the allegedly defective ink cartridges; and (5) the plaintiffs failed to give notice to Future Graphics of any defect in the ink cartridges.

In response, the plaintiffs argue that there is evidence on the record to establish that the warranty was created through advertising and marketing by Future Graphics acting in conjunction with the Morrell Defendants and that privity between the plaintiffs and Future Graphics can be established through evidence that the relationship between Future Graphics and the Morrell Defendants was significantly closer than an ordinary consumer and manufacturer. Additionally, the plaintiffs argue that evidence on the record establishes that Future Graphics packaged and shipped *all* the ink cartridges received by the plaintiffs, and is therefore liable whether or not it manufactured the defective merchandise. And, in the plaintiffs' own depositions there is testimony to establish that each of the named plaintiffs received items that were defective and thereby lost money. However, the plaintiffs offer no evidence that any notice was given to Future Graphics with regard to the defective ink cartridges.

Under the Uniform Commercial Code, where a tender of nonconforming goods has been accepted, "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." O.C.G.A. § 11–2–607(3)(a). *See also International Multifoods Corp. v. National Egg Products,* 202 Ga.App. 263, 414 S.E.2d 253 (1991). The plaintiffs have failed to adduce evidence that any of the three named plaintiffs provided notice to either the Morrell Defendants or to Future Graphics directly regarding the defective goods. Accordingly, Future Graphics is entitled to judgment as a matter of law with respect to the named plaintiffs' warranty claims.

**2. Contract Claims**

■ Future Graphics contends that the plaintiffs cannot establish the existence of a contract between themselves and Future Graphics. Thus, according to Future Graphics, it is entitled to judgment as a matter of law with respect to the breach of contract claim. In response, the plaintiffs point to the standard purchase orders that were entered into between each named plaintiff and Holiday Enterprises, Inc. (one of the Morrell Defendants). *See* Exhibits 91, 93 and 96 to the plaintiffs' response in opposition to Future Graphics' motion for summary judgment [Doc. No. 163].

While the plaintiffs concede that Future Graphics is not a signatory of the standard purchase orders, the plaintiffs argue that Future Graphics is a party to the contract because it is an entity of the enterprise created to defraud the plaintiffs. The plaintiffs have cited no authority—and the court is aware of none—that will support this theory. Accordingly, Future Graphics is entitled to summary judgment with regard to the plaintiffs' breach of contract claim (Count 9).

■ Next, Future Graphics argues that it is entitled to summary judgment on the plaintiffs' third-party beneficiary contract claim because the is no evidence that a contract between the Morrell Defendants and Future Graphics was intended for the plaintiffs' benefit. According to Future Graphics, the only agreements between it and any of the Morrell Defendants were: (1) the March 23, 2004 supply agreement; (2) the Holiday Ink Filming Agreement; and (3) the March 21, 2005 rebate program. *See* Ex. G to Future Graphics' motion for summary judgment [Doc. No. 122]. The plaintiffs have not directed the court to any other agreements as the basis of their third-party beneficiary claim.

■ "In order for a third party to have standing to enforce a contract under [O.C.G.A. § 9–2–20(b),] it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." *Miree v. United States,* 242 Ga. 126, 249 S.E.2d 573, 579 (1978) (Citations and punctuation omitted). A third party does not obtain standing to assert claims for breach of a contract where the contract does not evidence an intent to benefit a third party directly, but rather, only benefits citizens and members of the general public indirectly and incidentally.

*Page v. City of Conyers,* 231 Ga.App. 264, 499 S.E.2d 126, 128 (1998).

Of the three agreements, the only one that even arguably contemplates the plaintiffs is the March 23, 2004 agreement. However, within that agreement, the distributorship purchasers are mentioned only in connection with shipping costs, the availability and shipping of sample ink cartridges, and the fact that the Morrell Defendants may show Future Graphics facilities to potential distributors. *See* Ex. A to the Aff. of Luke Goldberg at ¶¶ 5, 6, and 7 (attached to Ex. G to Future Graphics' motion for summary judgment [Doc. No. 122] ). There is absolutely nothing within the language of this agreement that indicates the parties intended it to benefit the plaintiffs. Notably, plaintiffs do not even address Future Graphics' argument with respect to the deficiency of their third-party beneficiary claims.

Thus, the court concludes that there is no question of fact with regard to the intent of Future Graphics and the Morrell Defendants to enter into a contract for the benefit of the plaintiffs. Accordingly, the third-party beneficiary contract claims fail as a matter of law. Future Graphics is entitled to summary judgment with respect to Count 10.

### 3. Unjust Enrichment

Future Graphics argues that it is entitled to summary judgment on the plaintiffs' unjust enrichment claim because the plaintiffs cannot establish they conferred any benefit on Future Graphics. In response, the plaintiffs argue that this "contention fails to appreciate the constituent value of the enterprise" [Doc. No. 163 at 43].

All the evidence in this action demonstrates that the Morrell Defendants paid Future Graphics for the ink cartridges that were shipped to the individual distributors. There is no evidence to establish that any of named plaintiffs conferred a benefit directly to Future Graphics. The plaintiff has failed to cite to any authority for pursuing an unjust enrichment claim against a third party who indirectly received a benefit. Accordingly, Future Graphics is entitled to judgment as a matter of law with regard to the plaintiffs' unjust enrichment claims.

## III. CONCLUSION

For the foregoing reasons,

(1) the plaintiffs' motion for certification of the Class [Doc. No. 152] with respect to Counts 1, 2, 4, and 14 is GRANTED;

(2) the plaintiffs' motion for certification of the Class with respect to Counts 6, 7, 8, 9, 10, and 11 is DENIED;

(3) Corey Daniel Holzer and Michael Era Fistel, Jr. of Holzer, Holzer & Fistel, LLC and David J. Hungeling and Simon Jenner of the Law Office of David J. Hungeling are appointed to serve as Class counsel pursuant to Federal Rule of Civil Procedure 23(g);

(4) Future Graphics' motion for summary judgment [Doc. No. 122] is DENIED as to Counts 1, 2, 4, and 14 at this time;

(5) Future Graphics' motion for summary judgment [Doc. No. 122] is GRANTED as to Counts 6, 7, 8, 9, 10, and 11;

(5) The parties are DIRECTED to submit a joint proposal to this court within thirty days for notice to Class members pursuant to Federal Rule of Civil Procedure 23(c)(1)(B).